THE TEXAS BANKING AND INSURANCE CO. v. W. J. HUTCHINS.

[Case No. 887.]

1. BRIEFS—PRACTICE.—The practice of grouping together assignments of error in a brief, without pointing out the distinct propositions of law arising thereon, and which are relied upon, condemned.  A brief is defective which fails to indicate with certainty and clearness the legal questions involved, and to which the authorities cited, apply.

2. POLICY OF INSURANCE—WAIVER—PLEADING.—When, in a suit to recover on a policy of insurance, the defense pleads the invalidity of the policy for concealment and breach of warranty, and the plaintiff, by supplemental petition, sets up a waiver of that ground of defense, it must be specially pleaded, and must amount either to an agreement or an estoppel.  If the acts of the defendant constitute an estoppel, the particular acts, representations, or conduct relied on, should be pleaded with reasonable certainty.

3. PLEADING—FACT CASE.—See opinion for plea, setting up waiver or estoppel, which was held defective for want of certainty and definiteness in its averments.

4. INSURANCE—NOTICE—FORFEITURE.—An insurance company claimed that its policy on a factory destroyed by fire was avoided by the con-

cealment of the fact that the use of a cotton gin in the factory materially increased the risk, and was concealed from the company. The agent of the company, at a different place, informed its secretary, when on the street, away from his office, that the cotton gin was being used by the insured. On the trial, the court charged that this constituted notice to the company, and, in effect, that a forfeiture of the policy could only be claimed after notice, given within a reasonable time, of the intention of the company to claim it: *Held*, Error to charge, as matter of law, that the company, through the information given to its secretary, had notice.

5. CHARGE OF COURT.—See opinion for charge as to custom held erroneous.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

Suit by William J. Hutchins, appellee, upon a policy of insurance issued by the Texas Banking and Insurance Company, appellant, on the 14th of November, 1871, "to indemnify Ahrenbeck Brothers during one year thereafter against loss by fire, to the amount of $4,000, as follows: On their two-story frame shingle-roof building, $800; on their linter, huller, and shafting, $600; on their boiler and engine, $1,000; on their presses, $800; on their stock of oil and oil-cake, $800."

The building was occupied by the assured as a cotton-seed-oil factory, and the machinery and stock described were contained therein; the whole situated in the town of Hempstead, Texas; the loss, if any, payable to W. J. Hutchins.

The insurance company pleaded general denial, and specially: 1st. Misrepresentations and concealment, by the applicant for insurance, of the fact that, at the time of the application for and issuance of the policy, the building described as occupied as a cotton-seed-oil factory was occupied and used for the purpose of ginning cotton, with three gins therein, of which appellee had no knowledge, which fact materially enhanced the risk, and would have greatly enhanced the premium if it had been known, or have induced the appellant to decline it altogether, and was the direct cause of the fire occasioning the loss. 2d. That by the terms of the policy the appellee war-

ranted that the building insured and containing the subjects of the risk was occupied as a "cotton-seed-oil factory," but was in fact occupied and used for the ginning of cotton, with five cotton gins therein, which do not form a usual, necessary, or essential part of a cotton-seed-oil factory; that the ginning of cotton is a business of itself, distinct from a cotton-seed-oil factory, much more hazardous, and that appellant thereby broke his warranty. 3d. That, in contravention of the terms of the policy, the appellee used the property and premises mentioned, without the consent of appellant in writing, for the purpose of keeping, running, and working gins therein, which is a mechanical operation requiring the use of fire-heat, and to which fire-heat was applied, whereby the risk was increased, and by reason of the running of the gins the fire was caused which produced the loss complained of; wherefore the appellant was not liable, &c.

The answer set forth the application on which the policy sued on was issued, and averred that the fact that a cotton gin was running in the house was not therein disclosed, and was unknown to the appellant and known to appellee; that in fact one was running, and the fire occurred from it; that the gin increased the risk, and by reason of the concealment and breach of warranty and condition of the policy appellant was released from all liability thereon, and the policy was null and void.

To this answer Hutchins replied in a supplemental petition, denying all concealment and misrepresentation, and alleging that appellant made no inquiry to that effect; admitted that gins were being run at the time of the loss in connection with the operation of the oil factory in the house insured, and for the purpose of supplying seed to the latter; averred that the gins were propelled by the same engine and fire-heat that propelled the oil factory, and none other or greater; that they were so run in November, 1870, when appellant first took the risk, and had been ever since, openly and notoriously, and which fact was known to appellant and its agents; that Mohl, who was then an agent of appellant, with power to take and

cancel risks, had seen the gins running, and in June, 1872, notified appellant's secretary of the fact, who declined to cancel the policy and notify appellee, notwithstanding that by the terms of the policy he had the right to terminate the risk at any time; that appellant, with this knowledge, suffered Ahrenbeck to continue his business, and did not claim that the policy was void until 26th December, 1872, two months after the destruction of the property by fire; "wherefore appellant had waived its right to avoid the policy, and is estopped by its acts." It was also alleged in the original petition, in avoidance of appellant's reason for declining to pay the loss, that it was the general custom in Texas to run cotton gins in connection with cotton-seed-oil factories as part of the usual machinery employed in such factories, which custom was known to appellant when it took the risk sued on.

Appellant excepted specially to the supplemental petition, because it did not appear therefrom that the knowledge which the secretary acquired of the running of the gins came through Hutchins or his agent; that the facts set up were not sufficient to create a waiver or estoppel, and also denied all the averments, except that gins were run in the factory.

This demurrer was overruled, and there were verdict and judgment for Hutchins on the facts.

The facts in evidence are sufficiently disclosed by the opinion.

*Willie & Cleveland,* for appellant.

I. The first assignment of error is, that the court erred in overruling defendant's demurrer to plaintiff's replication. (Insurance Co. *v.* Lacroix, 45 Tex., 158; Gould on Plead., ch. 3, secs. 57, 58; Story Eq. Plead., sec. 263; Sayles on Plead., secs. 12, 30, 40, 116; Livermore on Agency, 237; 30 N. Y., 164; Ripley *v.* Ætna Insurance Co., 2 Lead. Cas. in Eq., 164; Big. on Est., p. 480.)

II. The second assignment of error is in the court overruling appellant's objections to testimony as set forth in bill of exceptions number 1. (17 Iowa, 187; 13 Iowa, 377; 22

Mich., 471; 9 Cush., 473; 17 Tex., 466, 576, and authorities cited.)

[This testimony was the evidence of Mohl, an agent of the company, in regard to his conversation with Lauve, the secretary. It will be seen in the opinion.]

The following errors assigned are considered together:

"3. The court erred in refusing to give the charges numbers 1 to 16, as set forth specifically in bill of exceptions number 2.

"4. The court erred in its charge to the jury.

"5. The court erred in giving the fourth paragraph contained in its charge, and especially in charging the jury therein as follows: 'Or if you believe from the evidence that at the time of the insurance the cotton gins were used openly and publicly in the plaintiff's cotton-seed-oil factory, and that at that time it was usual in Texas to run cotton gins in connection with cotton-seed-oil factories, then the plaintiff would be entitled to your verdict.'

"6. The court erred in giving the charge as contained in the fifth paragraph of its general charge, and particularly in undertaking to define what constituted notice in this case, and what the duty of the secretary of the company and what the duty of the company; and the court also erred in charging the jury therein as follows: 'Or if the proof shows that the gins did not increase the risks any more than the same number of linters would have increased it, then the plaintiff would be entitled to your verdict.'"

[Counsel argued at length these assignments. The whole charges, given and refused, are copied in the brief, as well as the evidence. Both are too lengthy for insertion. So much of them as is important to understand, will be inferred from the opinion.]

*Baker & Botts*, for appellee.

I. The first assignment of error is, that the court erred in overruling defendant's demurrer to plaintiff's replication.

There was no error in overruling said demurrer. The replication is not based on notice in the sense of that word, but upon a knowledge on the part of the insurance company, brought home to it through its own agent, that gins were being run in the house insured; and the insurance company having the right to cancel the policy on that ground, and failing to do so, it was proper to submit the facts to a jury to say whether the company had not elected to waive all legal objection to such use of the gins. (26 Iowa, 10; 72 N. Y., 117; 2 Amer. Lead. Cas., 920; Pierce *v.* Nashua Insurance Co., 50 N. H., 297; Currier *v.* Continental Insurance Co., 53 N. H., 538.)

The testimony objected to was that of Mohl. It was relevant and pertinent in this: that it showed that Mohl, while an agent of the insurance company, had seen cotton gins running in the oil factory, and had made known that fact to the secretary of the company several months before the loss occurred, and in this way brought home to the company a knowledge of the fact that Ahrenbeck was running cotton gins in connection with oil manufacture.

II. The plaintiff had alleged that it was usual, in Texas, at the time the policy sued on was issued, (1872,) to run cotton gins in connection with such factories. If this was true, the plaintiff, residing in Texas, is presumed to have taken the risk subject to the right of the assured to operate the factory in the way in which such factories were then usually operated in that State, whatever may have been usual in other States; and testimony having been introduced in support of the allegation, it was right and proper to charge the jury as the court charged on that point.

III. There was no error in defining the duties of defendant's secretary. This was matter of law.

If defendant's secretary was notified by another of defendant's agents that gins were being run in the oil mill, and he regarded the use of them as violative of the policy, then, in view of the facts before mentioned and the testimony in regard

to gins being usual in such factories in Texas, good faith and fair dealing required that he should cancel the policy, and not allow it to run until a loss occurred, and proofs were in his office, and the insurance money due and payable according to the terms of the policy, before raising the objection.

IV. Forfeiture of policy for breach of conditions may be waived, and if waived, the policy continues in force.

V. The waiver may be by parol, or may arise out of the acts or course of dealing between the parties, and is a question of fact for a jury.

GOULD, ASSOCIATE JUSTICE.—In examining this case we have found difficulty in ascertaining from the brief of counsel for appellant the points of law arising on his assignments of error relied on and intended to be presented. The brief contains no propositions, yet it presents in connection several assignments of error, embracing the entire charge as given and the refusal of sixteen charges asked. The court, as to those assignments of error thus grouped together in the brief, is left to infer for itself what propositions or legal questions arise thereon that are important in the determination of the case. An unnecessary multiplication of propositions is a mistake more frequently found in briefs under the new rules. But a brief is defective which fails to indicate with certainty and clearness the legal questions involved, and to which the authorities cited apply. We have, however, proceeded to dispose of the case, and if in doing so we have failed to pass upon questions which might arise under the assignments of error, it is believed that we have responded to all questions properly made in appellant's brief.

We are of opinion that the court erred in overruling defendant's exceptions to plaintiff's replication to the defense that the policy was void for concealment and breach of warranty, claiming that defendant had waived that ground of defense and was estopped from setting it up. It has been decided by this court

that waiver, when thus relied on, must be specially set up; that it must amount either to an agreement or an estoppel, and that in the latter case the particular acts, representations, or conduct that have been relied and acted on should be stated with reasonable certainty. (Insurance Co. *v.* Lacroix, 45 Tex., 158; Banking Co. *v.* Stone, 49 Tex., 15.) The exceptions were special, and one of the grounds was, that the allegations were vague, uncertain, and indefinite as to time, place, and circumstances, and state only legal conclusions.

The replication—or, rather, as it should now be styled, supplemental petition—alleges that defendant, having knowledge of the facts from which a forfeiture is claimed, "elected and declined to cancel the policy and notify plaintiff, or said Ahrenbeck Brothers, of the fact"; and the conclusion is drawn that "defendant, by its own acts, waived the breach of conditions as set up in its answer, if such ever happened, and is now estopped thereby from urging the same in defense of this suit." By what act or conduct defendant elected and declined to cancel the policy, or made known its election, is not stated; nor is it alleged that plaintiff was thereby, intentionally or otherwise, induced to act or to remain inactive to his prejudice, in the belief that the right to forfeit was abandoned. The replication was, we think, defective in the certainty and definiteness of its averments, and otherwise fell short of stating facts sufficient to amount to a waiver or estoppel. Our views of the requisites of a waiver or estoppel, in a case of this kind, will be further developed in considering the charge of the court.

The court charged the jury, that "if Mohl, as agent of the company, informed Lauve, its secretary, four or five weeks before the loss occurred, that plaintiff was running cotton gins in the insured premises, that would be notice to the company; and the latter, to avail itself of a forfeiture on account thereof, (if under the proof the use of gins worked a forfeiture,) should have apprised the plaintiff within a reasonable time of its intention to claim a forfeiture."

The evidence disclosed that Mohl was a local agent at Houston, not at Hempstead; that on a visit to defendant's factory at Hempstead, in June, 1872, he saw that gins were run in the factory; that in the same summer Lauve, the secretary, being in Houston, Mohl complained that he was not allowed to take risks on gins and gin-houses, and when told that the company declined all such risks, replied: "You have a risk on Ahrenbeck's cotton-seed-oil factory, and they are running gins." The secretary replied disclaiming any knowledge of any such risk, and said that if he found a policy providing for such risks, he would cancel it. The secretary testified that the conversation occurred on the street, that it passed out of his mind, and that he did not think of it again. He says: "If spoken to by the insured, or by any one acting for him, in relation to any fact affecting the validity of his policy, I should feel bound to act in some way on such communication; but I should not if spoken to by one having no interest in the policy."

Under these circumstances we do not think the court justified in charging the jury, as matter of law, that the company, through the information given to its secretary, had notice. The knowledge of the secretary may be equivalent to knowledge of the company; but the question is, Did the secretary owe to the holder of the policy any such duty as required him to bear in mind information thus received, and make it a rule of law that he should be held not to forget it? It is far from clear that the same rule should apply as in case of one claiming protection as an innocent purchaser without notice.

But, aside from this, is an insurance company, acquiring knowledge of some concealment or breach of warranty constituting a valid ground of forfeiture, in all cases bound in good faith to notify the policy-holder of the forfeiture? If the circumstances be such as to show that the policy-holder had been guilty of no fraud or intentional wrong, we are not prepared to say that the company should not in honesty notify him of the forfeiture or cancellation, especially if, under

the terms of the policy, the party would be entitled on the cancellation to a return of the premium, or a part thereof. Even a breach of warranty might occur without any intentional wrong. The cases, however, which are cited by counsel for appellee do not go to the extent of estopping an insurance company from defending on the ground of concealment or breach of warranty because of its silence, where the case is one of fraud and the company would be under no obligation to return any part of the premium.

The case most relied on by appellee is one in which, after the issuance of the policy, the holder had made a change in his business increasing the risk, which increase of risk without the assent of the company made the policy void, and if made with notice to the company entitled it to cancel the policy by paying to the assured the unexpired premium *pro rata*. (Viele *v.* Germania Insurance Co., 26 Iowa, 9.) In that case the authorized agent of the company had notice from the parties, and on examining the premises assented to the change on certain conditions. The waiver was express, and, though not indorsed on the policy, was complete and binding.

Clearly, the case, as an authority, does not go far enough to embrace the case before us and support the charge given by the court. The judge who delivered the opinion says in reference to the facts of that case: "If the agent determined that the risk was increased, his duty to his principal and good faith toward the assured, and every principle of honesty, required him to cancel the policy and advise the assured of the fact. It was bad faith of the darkest hue for the agent, upon determining that the risk was increased, so to act and speak as to induce the owner to believe that the policy continued to cover the property. The companies thereby retained the money paid on premiums which they had not earned, and which their contract required should be repaid to the assured upon canceling the policy, and induced their confiding customer to trust for indemnity," &c. This strong language must be taken with

reference to the case before the court. It would certainly not be applicable where the defense was, that the insured had been guilty of fraud, which was discovered without his agency, and when, though the policy were forfeited, he would be entitled to no return of premium. An equitable estoppel could not be made available to protect a party guilty of fraud from the consequences of that fraud. We are not called on, in the present attitude of the case, to lay down rules on the subject of waiver which may meet every possible phase of the case on another trial. The subject is one of too much doubt and difficulty to require of us such a course, and we content ourselves with the views already expressed.

The court also charged the jury: " If you believe from the evidence that cotton gins are embraced fairly in the term ' cotton-seed-oil factory,' or if you believe from the evidence that when the risk was taken cotton gins were used openly and publicly in the oil factory, and that it was then usual in Texas to run them in connection with such factories, then find for the plaintiff."

It is the opinion of the court that there was no evidence of any usage in Texas to run cotton gins in cotton-seed factories having been so general and so well and long established as to charge the insurance company with notice thereof, and that, under the evidence, this charge should not have been given.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 18, 1880.]