C. B. ERWIN V. SOUTHWEST INVESTMENT COMPANY.

No. A-1865. Decided December 1, 1948.
(215 S. W.. 2d Series, 330.)

*H. H. Cooper,* of Amarillo, and *W. D. Wilson,* of Lubbock for petitioner.

It was error for the Court of Civil Appeals to hold that C. B. Erwin was estopped to claim title to the automobile involved because he signed in blank the certificate of title and that such signature, unsworn to by him, placed, Dunn, the used car dealer in the attitude of being the owner of the property. McKinney v. Croan, 144 Texas 9, 188 S. W. (2d) 144; Manning v. Miller, 206 S. W. (2d) 165; Johnson v. Bryan, 62 Texas 623.

*Simpson, Clayton & Fullingim* and *Cleo G. Clayton,* all of Amarillo, for respondent.

Plaintiff by his acts permitted it to appear that the used car dealer was the true owner of the car and was therefore estopped from claiming any title thereto. Crockett v. Rogers, 137 S. W. (2d) 185; Anderson v. Hale, 144 S. W. (2d) 318; Moores v. Hunter, 67 S. W. (2d) 860.

MR. JUSTICE HART delivered the opinion of the Court.

On July 16, 1946, C. B. Erwin, the owner of a Lincoln automobile, made an agreement with L. W. Dunn, a secondhand automobile dealer, for Dunn to sell the automobile as Erwin's agent. Dunn requested Erwin to deliver the certificate of title to him so that Dunn could exhibit it to prospective purchasers to show his authority to make the sale. Erwin signed his name to the blank transfer printed on the back of the certificate and delivered it to Dunn, but did not fill in the name of the transferee and refused to comply with Dunn's suggestion to go before a notary public to swear to the transfer, stating that when the sale was made he would then make the necessary affidavit.

On July 30, 1946, Dunn applied to Southwestern Investment Company for a loan, representing that he owned the automobile and that he had bought it from Erwin. The agent for Southwestern Investment Company in this transaction was R. F.

Berry, Jr. Berry knew Erwin, who had been in the company's office on July 16 to pay for another car, which Erwin had bought from Dunn. Berry observed that the transfer on the back of the certificate of title was not sworn to and that the name of the purchaser had not been filled in. Nevertheless, as agent for the company he proceeded to make the loan to Dunn, taking his note and a trust receipt in the nature of a chattel mortgage on the automobile. Without attempting to communicate with Erwin to verify what Dunn had told him, Berry also instructed a stenographer working for the company to fill in the name and address of L. W. Dunn as the transferee in the certificate of title and to make and sign the notary's certificate showing that Erwin had appeared before her and sworn to the transfer on that day. The stenographer did as she was told, filling in the blanks and signing the certificate in her official capacity as a notary public, but she did not impress her notarial seal.

At the time of this loan, on July 30, the automobile had not been delivered into Dunn's possession. The arrangement between Erwin and Dunn was that Erwin was to have certain repairs made before the automobile would be turned over to Dunn for sale. On July 30 the automobile was still in the repair shop. It was first delivered to Dunn on the following September 13. Dunn displayed the automobile on his lot, and in response to inquiries from Erwin stated that he was getting some "nibbles" from prospective purchasers, but did not disclose his transactions with Southwestern Investment Company.

On some date in October, 1946, not made certain by the record, Dunn disappeared without paying his debt to Southwestern Investment Company. The company thereupon took possession of the automobile and obtained a new certificate of title from the State Highway Department, after filing an affidavit executed by Berry to the effect that the automobile belonged to Dunn and that he had defaulted on his debt and the car had been repossessed by the company as mortgagee. The automobile was then placed by the company with another used-car dealer for sale. Erwin happened to see his automobile at the new location and, learning that the company had placed it there, made demand on its agent for possession. He was informed that the company claimed to be the owner of the car and refused to deliver it to him, and within a few days thereafter he brought suit against the company. A nonsuit was taken in that suit, and thereafter the present suit for conversion was brought by Erwin, claiming actual and exemplary damages.

The cause was tried before a jury, but the only issues submitted to the jury related to the claim of exemplary damages. The jury answered these issues favorably to the defendant. On the issues relating to liability for actual damages, the district court made a general finding in favor of the plaintiff and entered judgment for him for the agreed value of the automobile. This judgment was reversed and rendered by the Court of Civil Appeals upon the ground that Erwin had invested Dunn with apparent title by delivering to him the certificate of title which Erwin had signed in blank and that Erwin was estopped to deny that the company as mortgagee had acquired good title. 213 S. W. (2d) 81. We have concluded that the Court of Civil Appeals was in error in its judgment and that the district court's judgment should be affirmed.

■ Sections 33, 51, 52 and 53 of the Certificate of Title Act (Article 1436-1, Vernon's Annotated Penal Code) read as follows:

"Sec. 33. No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and *no title to any motor vehicle shall pass or vest until such transfer be so executed.*

\*    \*\*    \*    \*    \*    \*    \*    \*    \*

"Sec. 51. It shall hereafter be unlawful for any person, either by himself or through any agent, to offer for sale or to sell *or to offer as security for any obligation any motor vehicle* registered or licensed in this State without then and there having in his possession the proper receipt or certificate of title covering the motor vehicle so offered.

"Sec. 52. It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department.

264

"Sec. 53. *All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with.*" (Emphasis added.)

It will be observed that these statutes expressly prohibit a sale of an automobile without the execution of a transfer before a notary public, and further expressly provide that all sales made in violation of the act shall be void and that no title shall pass until the provisions of the act have been complied with. Under their express provisions Erwin could not have sold the automobile to Dunn so as to pass good title without executing and swearing to the transfer before a notary public. Hoskins v. Carpenter, 201 S. W. (2d) 606, (writ refused, N. R. E.) ; Elder Chevrolet Co. v. Bailey County Motor Co., 151 S. W. (2d) 938. On the face of the transfer, it appeared that the law had not been complied with. All persons dealing with Dunn were legally put on notice of the defect in his title, even assuming that the facts represented falsely by him were true. Section 51 expressly made it unlawful for Dunn to offer the automobile as security for any obligation without having the properly executed certificate, and persons dealing with him were charged with notice of the illegality of his conduct in so doing, although under Section 52 it was not necessary for a person acquiring a lien to secure a transfer of title. We do not think it can properly be said that Erwin had invested Dunn with all of the indicia of title; on the contrary, a legally essential indicium of title, to wit, a properly executed transfer of the title certificate, had both actually and apparently been withheld from Dunn by Erwin.

■ A person dealing with the holder of an incomplete transfer of a certificate of title is ordinarily in no position to plead estoppel against the true owner. In McKinney v. Croan, 144 Texas 9, 188 S. W. (2d) 144, the certificate had been sworn to but the name of the purchaser had been left blank. In holding that a purchaser from the person in possession of the incomplete transfer could not plead estoppel against the true owner, this Court said: (188 S. W. (2d) at p. 147.)

"At the time they acquired their interest in the vehicle both McKinney and Young knew that Linney had not made application for a certificate of title in his own name as required by the above section of the statute. The Act provides that a sale without compliance with the statute is void. See Section 53 of the Certificate of Title Act. Consequently, McKinney and Young are in no position to plead estoppel as against Croan, from whom the vehicle had been stolen."

■ The Court of Civil Appeals in its opinion stresses certain testimony of Erwin to the effect that he signed the transfer and delivered the certificate of title to Dunn so that Dunn could make the sale and would not have to look up Erwin. This, however, is an incomplete statement of Erwin's testimony, for he further testified as to the exact conversation with Dunn as follows:

"I told him I would sign the certificate. He wanted me to sign it, and he said we would go in here to Walter Irvin's and get it notarized. 'No', I said, 'I will get it notarized whenever you sell it because', I said, 'Whoever you sell it to, we will notarize the certificate of title.' "

The same testimony was substantially repeated twice by Erwin upon cross examination; each time he stated in effect that he had no intention to transfer the title to Dunn and that he understood that any sale could not be complete until he filled out and swore to the transfer. The district court was clearly at liberty to believe these portions of Erwin's testimony and to discount or disregard other portions which might be interpreted as being inconsistent. We therefore conclude that there is evidence in the record to sustain the implied finding of the court that Erwin did not intend to transfer the title to the automobile to Dunn and that Dunn had no actual authority to transfer title to the automobile without getting in touch with Erwin so that he could fill in and swear to the transfer as required by law.

Moreover, we believe that the evidence regarding Erwin's purpose, intention and understanding and his conversations with Dunn is relevant only so far as it might show what authority Erwin actually intended to confer on Dunn, and not on the question of estoppel. There is no evidence that Erwin ever had any conversation or other communication with any of the company's agents regarding this car. The only thing which Erwin did which had any tendency to show Dunn's authority to deal with the car at the time the loan was made was to permit him to have possession of the certificate of title with the transfer signed in blank. Dunn did not even have possession of the car at the time the loan was made. The certificate of title showed on its face that no transfer as required by law had been made; it cannot therefore be said that Erwin had created the appearance of authority in Dunn to deal with the automobile as his own.

■ Respondent is not in a position to raise the plea of estoppel,

even if the evidence otherwise would sustain it. Respondent did not in fact place confidence in the incomplete transfer. Respondent's agent was fully cognizant of the necessity of having the transfer completely filled in and sworn to before it could be legally valid. With this in mind, he instructed another employee of respondent to fill in the transfer and to make out a certificate showing that Erwin had appeared and sworn to the transfer, when all of respondent's agents knew that this was false. Although Erwin was known to respondent's agent, he was not consulted. The fact that the notary's seal was not impressed on the document is immaterial here. The point is that respondent's agent did not rely on any appearance of title authority which Dunn had through possession of the certificate of title with the incomplete transfer; he realized its insufficiency of title with the incomplete transfer; he realized its insufficiency and undertook to supply its deficiencies by making out a false certificate. The respondent therefore showed neither the good-faith reliance on anything done by Erwin nor the equitable conduct on its own part which are both essential before estoppel can be successfully raised. See Texas Banking & Ins. Co. v. Hutchins, 53 Texas 61, 71, 37 Am. Rep. 750; Waxahachie National Bank v. Bielharz, 94 Texas 493, 496, 62 S. W. 743, 744.

There is evidence in the record that there was a custom among automobile dealers to accept transfers of certificates of title with the name of the purchaser left blank. However, the same witnesses who testified to this custom also testified that such transfers were not customarily accepted unless they were "notarized". Since the undisputed evidence shows that Erwin never appeared before a notary public and that the transfer bore no notary's certificate when it was presented to respondent's agent by Dunn, the evidence of the custom of dealing with blank but "notarized" transfers becomes irrelevant. See McKinney v. Croan, supra, for a discussion of the rights of the parties dealing with such blank but "notarized" transfers.

We do not intend by our present decision to hold that estoppel cannot arise against a claim that a transfer of a certificate of title has not been properly executed. See, for example, Wise v. Cain, 212 S. W. (2d) 880 (writ refused, N. R. E.) We merely hold that the trial court was correct in overruling the plea of estoppel in this case.

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

Opinion delivered December 1, 1948.

No motion for rehearing filed.