**CLEMONS v. LYLES et al.**
No. 12408.

Court of Civil Appeals of Texas. Galveston.
May 15, 1952.

Rehearing Denied June 5, 1952.

Billy B. Goldberg, Houston, for appellant.

M. Gabriel Nahas, Jr., Houston, for appellee Jack Lyles.

H. A. Crawford, Houston, for appellee John Radcliff, d/b/a Budget Finance Co.

Richard H. Powell and Robert L. Sharp, Jr., Houston, for appellee Security Discount Corp.

MONTEITH, Chief Justice.

Appellant, Tom Clemons, brought this action against Jack Lyles, a used-car dealer, and Security Discount Corporation, a

288

finance company, for rescission of the sale of an automobile sold by Lyles to Clemons, and for the return of a $500 down-payment, and additional payments aggregating $1,-834.55, with interest; and against appellee, John Radcliff, doing business as Budget Finance Company, for conversion of an automobile purchased by him from Jack Lyles, and for $1,600, its reasonable market value. Appellee, Jack Lyles, by cross-action, sought judgment against appellee, Security Discount Corporation, alleging that its employee, W. G. Wilson, had removed the title certificate to the car purchased by appellant from his employer's files and had forged his name to said certificate for the purpose of borrowing money from Budget Finance Company.

In a trial before the court, judgment was rendered that appellant take nothing against any of the appellees, and that appellee Radcliff, doing business as Budget Finance Company, was entitled to a foreclosure of his mortgage lien on the vehicle in question. Security Discount Corporation was denied a recovery over and against John Radcliff. Appellant, Tom Clemons, has appealed from this judgment.

Appellee, Jack Lyles, was a used-car dealer who had purchased the Plymouth automobile in question at a used-car auction sale. The car had previously been purchased from a prior owner who had signed the certificate of title to the car, without filling in the name of the assignee, and without having his signature notarized. Lyles placed the car on his lot for sale and borrowed money on it from Security Discount Corporation. The certificate of title, still signed in blank, was placed in the possession of Security Discount Corporation. The certificate was stolen from the company's files by W. G. Wilson, an employee of Security Discount Corporation. Wilson had his own name written in the blank space provided for the name of the assignee in the certificate, and secured the notarization of the original assignor's signature. He then mortgaged the vehicle to Budget Finance Company, owned by John Radcliff. Radcliff obtained a new certificate of title showing his mortgage.

Later appellant purchased the car in question from Jack Lyles. He was assured by Mr. Guthrie, president of Security Discount Corporation, that the company had the certificate of title to the car and that they would process it through to him, noting on the certificate the mortgage held by Security Discount Corporation, who financed the purchase from Jack Lyles to appellant. Appellant contracted to pay $1,625 for the car. He paid $500 in cash and financed the balance of the purchase price through appellee, Security Discount Corporation. He also paid carrying charges, which included a health and accident policy premium with Security Discount Corporation as beneficiary, and other items, including license fees and taxes.

Later W. G. Wilson, who had stolen the certificate of title to the car, was apprehended. He admitted the theft and forgery and was convicted and sent to prison. Defendant Radcliff advised appellant that Budget Finance Company had the title to the car and demanded the payment of its mortgage. He informed appellant that in the event the vehicle was not turned over to Budget Finance Company it would foreclose the mortgage it held against the car. Appellant, who had in the meantime made six payments in cash on the car in addition to the down-payment, turned the car over to Radcliff.

Appellees rely to a large extent on their contention that the sale of the automobile in question to appellant was in violation of Sections 33, 51, 52 and 53 of the Certificate of Title Act, Article 1436-1, Vernon's Annotated Penal Code of Texas, and was void. The Articles relied on by appellees read:

"Sec. 33. No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens

against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed.

\* \* \* \* \* \*

"Sec. 51. It shall hereafter be unlawful for any person, either by himself or through any agent, to offer for sale or to sell or to offer as security for any obligation any motor vehicle registered or licensed in this State without then and there having in his possession the proper receipt or certificate of title covering the motor vehicle so offered.

"Sec. 52. It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department.

"Sec. 53. All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with."

In the case of Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843 the Supreme Court of this State held that the Certificate of Title Act was enacted for the protection of the public, and that the provisions thereof are to be liberally construed to effectuate the purpose for which it was enacted. It held that one of its chief objectives was to prevent the sale of encumbered motor vehicles without the disclosure, to the purchaser thereof, of any and all liens for which any such motor vehicle stands as security.

The certificate of title to the automobile in question reflected that the ownership of the automobile in question was in D. W. Howard, Jr. The vehicle had passed through several owners prior to its acquisition by appellee Lyles, all of whom had failed to comply with the law.

Appellant plead and testified on the trial that at the time he purchased said car nei-

ther Jack Lyles, nor Security Discount Corporation advised him that there was a mortgage on the car, and that the mortgage of the car to the Budget Finance Company was unknown to him. He testified at the time of the purchase of the car he had discussed the question of the delivery of the certificate of title to the car to him, in the office of Mr. Guthrie, the manager of the Security Discount Corporation; that Jack Lyles had asked Mr. Guthrie if he had the certificate of title, and had been informed by Mr. Guthrie that the certificate was in the files of Security Discount Corporation; that it had to go to Austin for processing, and that it would be delivered to him in about eight weeks. He testified that he had asked Mr. Guthrie about the certificate of title on several occasions, but had never received it; and was told by Mr. Guthrie that it had probably been delayed in Austin, and that it would be sent to him soon. He testified that Mr. Radcliff came to his house, after he had purchased the car, and told him that he (Radcliff) had the title to the car; at the time Mr. Radcliff came out to his house, he had made every payment due on the car, but that Mr. Radcliff took the car away from him; that he went to see Mr. Guthrie about it and was told by Mr. Guthrie that he would get it back for him.

 While it is undisputed that appellant did not comply with that portion of Section 52 of the Certificate of Title Act, by demanding of the seller the certificate of title covering the car, we think that, under the holdings by our courts, the Act is to be liberally construed in order to effect the purpose for which it was enacted. The fact that appellant had requested that the certificate of title be delivered to him at the time of the purchase, and the fact that he was assured by Mr. Guthrie, the President of Security Discount Corporation, in the presence of the seller, that he had the certificate of title, but that it was necessary to send it to Austin to be processed, and that it would be delivered to him when it was returned, was in effect a demand of the title certificate.

 It is held by the Supreme Court in the case of McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144, that the Certificate of Title

Act does not require the purchaser of a motor vehicle to obtain the certificate of title immediately after purchasing the vehicle, and in the case of Clade v. National City Bank of Waco, Tex.Civ.App., 229 S.W.2d 815, writ refused, n. r. e., it was held, under an almost identical state of facts, that it was not necessary that the title certificate be delivered to the purchaser of an automobile at the very time of the purchase, but that it might be delivered to him at a later date.

In the Clade case, supra, the court found that Morgan had sold the automobile to Clade without having in his possession certificate of title at the time the sale was made, and that he had paid Morgan $1,552.-25 for the car. The court rendered judgment in Clade's favor, for the sum paid by Clade, with legal interest.

In the case of Wilde v. Liedtke, Tex.Civ.App., 231 S.W.2d 1009, where the purchaser of a car was told by the dealer that there would be a delay in the delivery of the certificate of title, on account of an incorrect motor number, it was held that the purchaser was entitled to a rescission of the contract of purchase, notwithstanding the fact that the certificate of title was not tendered to plaintiff until time of the trial of the case.

In the instant case, it is undisputed that appellee Radcliff's mortgage lien was acquired from a thief, who confessed that he had stolen the title certificate from the files of Security Discount Corporation, and had wrongfully inserted his own name as the assignee, and had wrongfully obtained an acknowledgment of the prior transferor's signature, and that these facts were unknown to appellant.

The trial court, we think, erred in rendering judgment in favor of Jack Radcliff, doing business as Budget Finance Company, for the reason that the courts of this State have uniformly held that a purchaser of property from one who has acquired possession thereof by theft, acquires no title thereto. McKinney v. Croan, supra.

The record reflects that the vehicle in question had passed through several owners prior to its purchase by Lyles, and that all of them had failed to comply with the provisions of the Certificate of Title Act. It is apparent that, when Security Discount Corporation took over the title certificate, its employees knew that the Certificate of Title Act had been violated.

From a careful review of this record, we do not think that appellees have shown, as a matter of law, that their transactions between them and appellant, were—under Article 1436–1 of the Penal Code—void; and since there are equities in the case, which we think, should be adjusted, the judgment of the trial court is reversed and the cause remanded to the trial court.