Donald E. FREEBERG, Appellant,

v.

SECURITIES INVESTMENT COMPANY
OF ST. LOUIS et al., Appellees.

No. 13544.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 20, 1960.

Rehearing Denied Feb. 17, 1960.

———◆———

Drought & Kaufman, San Antonio, for appellant.

Jack F. Ridgeway, San Antonio, for appellee.

POPE, Justice.

Donald E. Freeberg, plaintiff below, appeals from a summary judgment in favor of defendants, James D. McClaugherty and Securities Investment Company of St. Louis. Primarily, the case concerns the application of Sections 33, 52 and 53 of the Certificate of Title Act, 3 Penal Code, Art. 1436–1, Vernon's Tex. Penal Code.

The trial court granted a summary judgment in favor of defendant McClaugherty and denied plaintiff's motion for severance. Later the court granted Investment Company's motion for summary judgment, and the appeal is from a judgment which consolidated those two judgments. At the outset, we must discuss the showing required of a respondent in a summary judgment hearing. The judgment recites, and McClaugherty and Investment Company make frequent mention in their briefs, that Freeberg failed to file counter-affidavits to defendants' motion for summary judgment.

■ Summary judgments are not granted by default, but upon the movant's discharge of his burden to show the absence of fact issues. If movant's showing poses only a question of law, there is no need to file counter-affidavits. Couey v. Arrow Coach Lines, Tex.Civ.App., 288 S.W.2d 192. When movant's own showing develops a fact dispute, he defeats his own summary judgment, though there are no counter-affidavits. Jindra v. Jindra, Tex.Civ.App., 267 S.W.2d 287; Rolfe v. Swearingen, Tex. Civ.App., 241 S.W.2d 236; 4 McDonald, Texas Civil Practice, § 17.26.3. A respondent is entitled to rely upon admissions, depositions and exhibits in the record, though he has not filed counter-affidavits. Ragsdale v. McLaughlin, Tex.Civ.App., 285 S.W. 2d 467. On the basis of either of these rules, Freeberg had standing before the court at the summary judgment hearing, and the inference that he lost because he did not have a sworn answer or opposing affidavits is not correct.

Donald E. Freeberg, late in 1955, was about to be transferred for military service to Germany. He owned a trailer house, and his certificate of title recorded a lien. The lien had been paid and was released on the back of the certificate of title. Freeberg wanted to sell the house, so he contracted Donald L. Hamilton, the sales manager of Hilltop Trailer Sales, an assumed name of Alliance Finance Corporation. He delivered to Hilltop his certificate of title which showed he was the owner. He did not then transfer the certificate and it has never been transferred. He also delivered to Hilltop a written contract which made Hilltop his agent to sell his trailer house for a commission of five per cent. The instrument "appoints the consignee his true and lawful attorney-in-fact for the limited purpose of delivering the title of the said house trailer in accordance with the terms of this agreement." It made the consignee

the judge of the good credit and business standing of the purchaser. It authorized Hilltop "to collect for and in behalf of the consignor full payment for the house trailer so sold and to immediately pay to the consignor any amount collected. * * *" That instrument empowered Hilltop to act as agent to sell, to make a sale on credit, to transfer the title, and to collect for Freeberg. Freeberg also signed another power of attorney to transfer a motor vehicle, but it was signed in blank. He delivered it to Hilltop.

Neither Freeberg nor his agent, Hilltop, has ever executed a transfer of the certificate of title to the trailer house, though it has been in Hilltop's possession, or that of its assigns, since the day Freeberg delivered it to Hilltop in December, 1955. Section 33 of the Certificate of Title Act says that no motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title. Section 52 says that it is unlawful to buy or acquire any title other than a lien without then and there demanding of the proposed seller the registration receipt and certificate of title. Section 53 declares that sales in violation of the Act shall be void and that no title shall pass unless the provisions of the Act have been complied with. Though neither Freeberg nor his agent has done what the Act says is necessary, the judgment of the trial court is that Freeberg made a valid sale of the trailer house, and that the purchaser, McClaugherty, acquired title.

There is no dispute in the fact that Hilltop had the power to act as agent for Freeberg. From the undisputed showing, however, Hilltop did not act as agent for Freeberg, but acted solely for itself as though it were the owner. Freeberg was dealt out entirely. He started as sole owner, but at the end of the transaction he owned nothing and received nothing. The trial court has confused Hilltop as agent for Freeberg, with Hilltop as owner, and has concluded that because Hilltop had power to sell for Freeberg, it could therefore sell for itself. Hilltop's sole interest in the transaction was a five per cent commission.

Hilltop on December 30, 1955, undertook to sell the Freeberg trailer house to James D. McClaugherty. McClaugherty, as a partial payment, traded in and delivered to Hilltop his 1951 Liberty trailer-house and transferred title to Hilltop. He executed a note payable to Hilltop in the amount of $5,850. He entered into a time purchase contract which showed that it was between him as purchaser and Hilltop, a dealer, as the seller. All of these documents showed that McClaugherty dealt with Hilltop as though Hilltop, itself, was the owner. The judgment recites that these documents were executed in favor of Hilltop, but not as agent for Freeberg. The McClaugherty note was immediately transferred to Alliance Finance Company, and later, on March 12, 1956, Securities Investment Company bought the note and lien from Alliance.

■ From the undisputed facts, Hilltop knew that Freeberg was the sole owner, and McClaugherty, the purchaser, knew it too. The depositions in the record show that Hilltop told McClaugherty before the sale, that Hilltop did not own the trailer house but was acting as selling agent for Freeberg. Apart from this actual knowledge, the Certificate of Title Act puts such information easily within reach of a purchaser to determine who the true owner may be. The purpose of the Act is to manifest this fact.

■ The error in this case has arisen from a confusion of Hilltop as mere agent for Freeberg, with Hilltop the dealer. Though Hilltop had power to sell for Freeberg, the owner, it was not the owner. Pride v. Brandon, Tex.Civ.App., 227 S.W. 2d 385, 386; 7 Tex.Jur.2d Automobiles, § 61. Freeberg's complaint is that Hilltop converted the trailer house and all evidence of title to its own use, and that the purchaser knowingly bought from the converter as owner, instead of as Freeberg's

agent. To justify his purchase from Hilltop acting as owner, and to show good faith, McClaugherty points to the things which he did. The undisputed facts show that he filled in an application for a new title, he paid the license fees for the trailer, he filled in a tax affidavit and a weight affidavit. All of this does not obscure the fact that McClaugherty also bought the trailer from Hilltop whom he was told did not own it. Examination of the certificate of title could have revealed nothing more, and it was in the hands of Hilltop. An examination of the consignment contract would have revealed that the sole interest of Hilltop was a sales commission. McClaugherty thus did many things which the certificate of title act does not consider significant, but omitted to do that which the Act requires. Erwin v. Southwestern Inv. Co., 147 Tex. 260, 215 S.W.2d 330, 332; Hoskins v. Carpenter, Tex.Civ.App., 201 S.W.2d 606, 608.

McClaugherty also contends that Freeberg clothed Hilltop with apparent authority, by placing the trailer in Hilltop's hands. McClaugherty could hardly rely upon that when he was told and knew that the trailer belonged to Freeberg and that Hilltop was merely acting as selling agent. Instead of clothing Hilltop with appearances of ownership, it appears Freeberg withheld appearances by not assigning the certificate of title to Hilltop. Erwin v. Southwestern Inv. Co., supra. It may well be asked if this be a case where the purchaser should be protected, then of what use is the Certificate of Title Act? This is precisely the kind of situation it was intended to thwart. Many vehicles are sold by agents in possession. Appellees propose two principles in this case, which, if they be valid, will entirely emasculate the Act. One is that a seller, whose unassigned certificate of title shows he is the owner, will not be able to avail himself of the Act if his vehicle is converted or stolen by his own agent. The other is, that a seller's delivery of possession to an agent for sale, without anything more, is such apparent ownership in the

agent as will excuse the buyer from complying with the Act. The declared purpose of the Act is to defeat schemes to traffic in other person's motor vehicles and one of those schemes is conversion by an agent of a principal's vehicle. Section 1 of the Act declares that its purposes should be achieved by a liberal construction of its objectives.

McClaugherty seeks to excuse his purchase from the wrong person by the statement in several cases that a purchaser complies with the law by demanding a certificate, even though he does not immediately receive it. McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144; Mills v. Clark, Tex.Civ.App., 257 S.W.2d 746; Clemons v. Lyles, Tex.Civ.App., 249 S.W.2d 287. There may be a valid sale between the owner and purchaser though the certificate is not immediately delivered and while the papers are being processed, but those cases do not excuse the processing of papers indefinitely and do not countenance sales by non-owners. McClaugherty made his trade on December 30, 1955. Up to final judgment on March 20, 1959, he was still waiting for his certificate of title. The record does not reflect what steps were taken during that period of time, but it does show that the Freeberg certificate of title was still unassigned either by him or by Hilltop, his agent. One may surmise that the reason McClaugherty was still waiting for his certificate of title is that his application for a new certificate of title, signed on December 30, 1955, necessarily would show that he was buying a car from Hilltop when it belonged to Freeberg. This is not the situation of a purchaser buying from an owner, followed by a temporary lapse of time before the papers are processed. To hold that a purchaser complies with the law by making a request for the certificate of title, whether the request is made of the owner or someone else who falsely poses as owner would make a ritual of and leave very little in the protective features of the Act.

We turn now to the summary judgment in favor of Securities Investment Company. Most of what has already been said applies to it too. After Hilltop sold the trailer and took all evidences of indebtedness in its name, it then assigned to Alliance who sold the note and lien to Investment Company and received the cash. McClaugherty commenced making his purchase payments to Investment Company. At that time the trailer was sold, Hilltop and Alliance had all the purchase money, and Freeberg had nothing. The sale was made on December 30, 1955, and Investment Company bought the note on March 12, 1956. At that time there was no new certificate for the trailer house which showed on its face the lien which it had bought. Section 32 of the Title Act authorizes the issuance of an "Original" certificate of title, and in case there is a lien, a "Duplicate Original." The "Original", by law, is sent to the lienholder. When, therefore, Investment Company bought the note and lien it knew that there was no record of the lien which met the requirements of the Certificate of Title Act. Giles v. Lehman, Tex.Civ.App., 163 S.W.2d 720. The lienholder did not, and could not, furnish the Original Certificate with a record of the lien, and Investment Company knew or should have known it. Therefore, it bought the note without obtaining the evidence of the lien, which at that time was disclosed neither by any certificate of title, nor in the records of the office of the Highway Department.[1]

Appellees also contend that the trial court properly granted judgment because the court sustained its special exception that the action was barred by limitations. The record does not disclose whether the court sustained the exception, but the action is not barred. The vehicle was delivered to McClaugherty on December 30, 1955. Freeberg, on December 5, 1957, sued both McClaugherty and Securities Investment Company for conversion, or to recover the property and the rental value. This action was clearly not barred. By amended petition, Freeberg sued alternatively for conversion and for the proceeds of the sale, if it be held that the sale was a valid one. He was in Germany in the military service, and first learned of the conversion in January, 1957. He filed the amended petition June 6, 1958. The alternative action was not barred by limitations. Barker v. Swenson, 66 Tex. 407, 1 S.W. 117; Security National Bank of Independence, Kansas v. Crabb, Tex.Civ.App., 91 S.W.2d 959; Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502; Woodward v. San Antonio Traction Co., Tex.Civ.App., 95 S.W. 76; 42 Tex.Jur., Trover and Conversion, § 31; 5 Tex.Jur., Bailment, § 21.

The judgment is reversed and the cause remanded.

---

1. The Act was sponsored by automobile finance companies and banks so such information could be disclosed to them through a central department. 3 Penal Code, pp. XIII, XIV, XVIII, XIX. Vernon's Ann.Penal Code.