ASSOCIATES INVESTMENT COMPANY,
Appellant,

v.

Tom GALLOWAY et al., Appellees.

No. 7619.

Court of Civil Appeals of Texas.

Amarillo.

May 23, 1966.

McGown, Godfrey, Logan & Decker, Fort Worth, John W. McMackin, Fort Worth, of counsel, for appellant.

Bass & Hobbs, Lubbock, for appellees.

DENTON, Chief Justice.

This suit, consolidated with two other suits with similar facts, involves the priority of liens on three mobile trailer homes. The trial court, without a jury, entered judgment holding the liens held by Michigan National Bank, appellee, were valid and superior to those held by Associates Investment Company, appellant, and plaintiff below. Associates Investment Company has appealed from that judgment. The purchasers of the trailer homes have not appealed. The cause involves an interpretation and application of the Certificate of Title Act, Article 1436–1, Vernon's Texas Penal Code.

The material facts are undisputed. The cause involves three transactions, but the transactions were considered identical by the parties and they will be so treated here. Bluebonnet Sales Company was a dealer engaged in the retail sale of mobile trailer homes. Bluebonnet sold the trailer homes involved here to retail purchasers, who at the time of the purchase executed a promissory note and a chattel mortgage in favor of Bluebonnet and executed an application for a certificate of title. The notes and chattel mortgages were assigned by Bluebonnet to Michigan National Bank and in due course the certificates of title were issued showing the purchasers as the owner and Michigan National as the lienholder. The original certificate of title was forwarded to Michigan National, who at all

times material here retained possession of the original title showing their lien on its face. Subsequently, each of the three original purchasers became delinquent in their payments, and the trailer homes were repossessed by Bluebonnet and placed on their lot for resale. Michigan National retained the original certificate of title and Bluebonnet later resold the trailer houses. Thereupon, Bluebonnet took new notes and chattel mortgages from a second purchaser, and assigned the notes and mortgages to Associates Investment Company, appellant. Proceeds of the second sales were not forwarded to Michigan National. When the bank learned that Bluebonnet had sold the trailer homes and failed to pay over the proceeds of those sales, its agent, Tom Galloway, took possession of the units and resold them. The cause of action against Galloway was dismissed prior to the trial of these suits. When suit was filed the proceeds of these sales were placed in the registry of the court pending a determination of the priority of liens between Michigan National and Associates.

It is undisputed Bluebonnet repossessed the three units and placed them on their lot for resale with the knowledge of Michigan National. The trial court found in each instance where Michigan National purchased the promissory note and lien on the units, Bluebonnet executed a contract with Michigan National by which it agreed to "at any time upon demand repurchase from Michigan National Bank the trailer covered by the mortgage within referred to for the amount then remaining unpaid;" and concluded that in each repossession Bluebonnet was protecting its own interest under the terms of the repurchase agreement as well as that of the bank. The notes and mortgages executed by the second purchaser were subsequently transferred to Associates Investment Company for a valuable consideration. Neither the second purchaser nor Associates had actual knowledge that Michigan National was holding any lien against the mobile units.

Appellants' contention is that Michigan National consented to the resale of the mortgaged units by Bluebonnet; and in so consenting, Michigan National thereby waived its lien as against subsequent purchasers and mortgagees. In support of its position, Associates cites the general rule that a mortgagee may waive his mortgage lien and be estopped to enforce it by conduct inconsistent with its existence. Appellant relies primarily on Sechrist-Hall Company v. Harlingen National Bank (Tex. Civ.App.), 368 S.W.2d 155 (Ref. N.R.E.). That case dealt with chattel mortgages on central air conditioning units. The court held the mortgagee bank "consented to the sale of the mortgaged property and that it thereby waived its mortgage lien." We have no quarrel with that holding but it has no application here. The Certificate of Title Act was passed to prevent fraud in the purchase and sale of motor vehicles and house trailers. The Title Act superceded the chattel mortgage registration statutes in so far as they pertain to motor vehicles and house trailers. Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185. Dublin National Bank v. Chastain (Tex.Civ.App.) 167 S.W.2d 795 (Writ Ref.) Section 33 of the Certificate of Title Act provides that "[n]o motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title * * * which form shall include, * * * an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed." Section 52 of the Act declares it to be unlawful to buy or sell any title other than a lien without then and there demanding of the proposed seller the registration receipt and certificate of title. Section 53 declares that all sales in violation of the Certificate of Title Act are null and voil and no title shall pass until the provisions of the Act have been complied with. Associates and its assignor failed to comply with these provi-

sions. Before purchasing the notes and mortgages from Bluebonnet, Associates merely made an independent credit check. Michigan National had complied with the Title Act while Associates and its mortgagor and the second purchasers had not. When Associates bought the notes and mortgages it knew or should have known its lien was not recorded as required by the Certificate of Title Act. The original certificate of title, with the lien properly recorded, remained in the possession of Michigan National. Associates is not in a position to raise the defense of waiver or estoppel. It did not comply with Section 42 of the Act which requires the lien to be noted on the new certificate of title by the highway department. Associates knew or should have known Bluebonnet was not in a position to furnish an original certificate of title with its recorded lien. It purchased its lien with the lien of Michigan National outstanding and the latter lien fully met the requirements of the Certificate of Title Act. Erwin v. Southwestern Investment Company, 147 Tex. 260, 215 S.W.2d 330.

The material facts of the instant case are closely analogous to those in Freeberg v. Securities Investment Company of St. Louis (Tex.Civ.App.) 331 S.W.2d 825 (Writ Ref.). In holding a purported sale of a mobile home by the owner's agent void and refusing to enforce an unrecorded lien, the court held:

"When, therefore, Investment Company bought the note and lien it knew that there was no record of the lien which met the requirements of the Certificate of Title Act. Giles v. Lehman, Tex.Civ. App., 163 S.W.2d 720. The lienholder did not, and could not, furnish the Original Certificate with a record of the lien, and Investment Company knew or should have known it. Therefore, it bought the note without obtaining the evidence of the lien, which at that time was disclosed neither by any certificate of title, nor in the records of the office of the Highway Department."

The language quoted is applicable to Associates' position in the instant case.

Appellant also urges the Certificate of Title Act is not applicable or effective to invalidate its lien or to render its lien inferior. The argument is, the general rule that a mortgagee waives his lien by consenting to the sale of the mortgaged property is not discarded because such property is a motor vehicle. The reasoning is that the Act does not prohibit parties from entering into a valid contract to sell without a transfer under the Act. In support of this position, appellant relies primarily upon Elder Chevrolet Company v. Bailey County Motor Company (Tex.Civ.App.) 151 S.W. 2d 938 (N.W.H.). After summarizing the transactions involved, the court there said: "It reveals a situation where all parties in conducting the transactions involved entirely ignored the Certificate of Title Act." This cannot be said of Michigan National in the instant case and the decision in the *Elder* case has no application here. The Certificate of Title Act clearly applies to the transactions here. Associates is not seeking to enforce a contract to sell, but to enforce its unrecorded lien against a lien that does comply with the Act in all respects. The *Elder* case recognized a distinction between a sale and a contract to sell and seems to be holding the Certificate of Title Act does not attempt to regulate a contract to sell a motor vehicle. However, as stated, the case is distinguishable on the facts.

The lender of money may protect himself by retaining the title papers in his possession or by causing a lien to be noted upon the title. The priority of liens must rest upon the title documents under terms of the Certificate of Title Act. First State Bank of Corpus Christi v. Austin, (Tex.Civ. App.) 315 S.W.2d 390. (Writ Ref.). A review of the provisions of the Certificate of Title Act together with the authorities cited makes it apparent Michigan National was the holder of a valid first lien against each of the units involved.

The judgment of the trial court is affirmed.