G., H. & S. A. R'Y CO. v. HENRY & DILLEY.

(Case No. 2040)

1. GENERAL DENIAL—PRACTICE—See opinion for defenses admissible under a general denial.

2. EVIDENCE—See opinion for evidence held sufficient to show that the specifications of a contract were furnished to the contractors.

3. CONTRACT—CONSTRUCTION—USAGE — AUTHORITY CONFERRED—EVIDENCE—A contractor agreed to haul and embank hard rock for a railroad company at a fixed rate per cubic yard.   The contract provided that "the measurement of quantities will usually be made in the cuts or pits from which the material has been taken;" and " the quanities and amounts of work performed shall be determined by the chief engineer, and his determination shall be conclusive upon both parties."   The engineer estimated the amount furnished by measuring the excavation from which the rock was taken.   The contractor contended that the rock should have been measured after it was embanked.   *Held:*

(1) That as the specifications showed that the measurements were not to take place in the cuts in all cases, the exception would have to be determined by outside testimony, by usage, or the practice of the company in like cases;

(2) The evidence (as set forth in the opinion) was sufficient to warrant the conclusion that the provision as to measuring in the cuts was not usually enforced when solid rock was the material taken from them;

(3) While the determination of the engineer, as to the matter submitted to him, was final and conclusive, unless he was guilty of fraud, misconduct or such gross mistake as would imply bad faith, or a failure to exercise an honest judgment (following M. & P. R'y Co. v. March, 114 U. S. 549), yet, his decision had to be in accordance with the contract;

(4) He was to decide under the legal construction of the contract, not upon such construction as he chose; he could not adopt rules of measurement that the contract did not authorize, and, if his measurements were based upon an erroneous view of the contract, they did not conclude the parties. (Authorities cited.)

4. Same—See opinion for construction of the terms of the contract.

5. Contract—Interest—See opinion and statement of facts for a contract, by virtue of which money became due at a certain date, and drew interest from that date, instead of from the first of January following.

Appeal from Harris. Tried below before the Hon. James Masterson.

The plaintiffs' (appellees) petition was to set aside the determination of the engineer, as to the quantities and amounts of part of the work (rock bank hauled) done, and his decision upon the question which arose between the parties, during the progress of the work, in the execution of a contract for railroad construction, made December 1, 1881; and to recover for such rock bank hauled in excess of the quantities as determined by the engineer.

The petition and the contract exhibited stated: "The quantities and amounts of the several kinds of work performed under this contract, shall be determined by the chief engineer, or by an assistant engineer acting under his direction; and his determination shall be conclusive upon both parties. The chief engineer, or his assistant, * * * * shall decide every question which can, or may, arise between the parties, relative to the execution thereof," (this agreement) "and his decision shall be final and binding on both parties to this contract."

The ground of complaint stated against the determination and decision of the engineer was that the quantity of rock bank hauled was determined by measuring the excavations, or pits, from which the material had been taken, to make the bank, and the allegation was that plaintiffs were entitled to have all measurements and estimates of such enbankments made of the embankment itself, and were not required to accept, as the contents of embankment, estimates based on measurements of the excavations, or pits, from which the material was taken; that they had been furnished with the estimates of all the work done by them under the contract, and the same amounts to

$667,420.20, which sum defendant paid them, and they accepted the estimates as correct, except in the particular pointed out.

The contract provided that payments were to be made on the fifteenth of each month, as the work progressed. The work was completed by the contractors, and received by the road, on September 10, 1882. The other facts necessary to be stated will be found in the opinion.

*E. P. Hill*, for appellant, on the effect of the engineer's decision, cited: Herrick *v.* V. C. R. R., 27 Vt. 673; Kidwell *v.* B. & O. R. R. Co., 11 Gratt. 676; Condon *v.* R. R. Co., 14 Gratt. 302; Commonwealth *v.* Clarkson, 3 Penn. St. 277; R. R. Co. *v.* Wilcox, 48 Penn. St. 161; Howard *v.* A. V. R. R. Co., 69 Penn, St. 493; McMahon *v.* R. R. Co., 20 N. Y. 463; Grant, Alexander & Co. *v.* R. R. Co., 51 Ga. 348; Finnegan *v.* L'Engle, 8 Fla. 413; R. R. Co. *v.* Riley, Sup. Ct. Col., October, 1884; 2 Myers' Fed. Dec. 1298; Kihlberg *v.* United States, 97 U. S. 398; Aspley *v.* Thomas, 17 Tex. 220; 3 Graham & Waterman on New Trials, 1278; Jones *v.* Prosh, 6 Tex. 202; 2 Story's Eq., secs 1452-1456; Boston Water Power Co. *v.* Gray, 6 Met. 131; Burchell *v.* Marsh, 17 How. 344; Schenk *v.* Cuttrell, 1 Green's Ch. 297; Roloson *v.* Carson, 8 Md. 208.

*Baker, Botts & Baker*, for appellees, on the binding effect of the engineer's measurement, cited: A. M. C. & N. A. R'y Co. *v.* Northcott, 15 Minor 49; McAvoy *v.* Long, 13 Ill. 147; Kistler *v.* R'y Co., 88 Ind. 460; 1 Rorer on Railroads, 461; Kihlberg *v.* United States, 97 U. S. 398; 1 Red. 416.

WILLIE, CHIEF JUSTICE. — The appellant's assignments of error question the judgment of the court below, only so far as it allows to Henry & Dilley the sum of $32,737.50 for one hundred and nine thousand one hundred and twenty-five cubic yards of hard rock hauled and embanked for the railway company, and ten per cent. upon that sum as a *bonus* for the early completion of the work. If the allowance of the principal sum above stated is correct, there is no doubt as to the right of the appellees to the ten per cent. *bonus*, as the whole work contracted for was completed within such time as entitled them to the additional amount claimed, under the terms of the agreement.

The right to the principal sum depends upon whether the amount of rock hauled and embanked by the appellee is to be determined by measuring the excavation from which it was taken, or the embankment of which it formed part, after being hauled. The appellant

contends that the former, and the appellees that the latter, should be estimated. The proof shows that the rock embanked will measure fifty per cent. more than before it is quarried, and this difference amounts to the one hundred and nine thousand one hundred and twenty-five cubic yards upon an estimate of the entire solid rock work done by the appellees under their contract.

The court accepted the views of the appellees, and, hence, its judgment in their favor for the hauling and embanking of the one hundred and nine thousand one hundred and twenty-five cubic yards of rock, and the ten per cent. *bonus* thereon. The contract, itself, does not state in terms as to whether the pit or the embankment is to be resorted to in making the measurement. It purports to attach as part thereof some specifications, by which the work is to be performed, and these specifications provide, among other things, that "the measurement of quantities will usually be made in the cuts, or pits, from which the material has been taken."

The contract further provides, as follows: "The quantities and and amounts of the several kinds of work performed under this contract shall be determined by the chief engineer, or by an assistant engineer acting under his direction; and his determination shall be conclusive upon both parties."

The appellant contends that the specifications, as above quoted, fix the manner of making the estimates; and, if not, that the contract, itself, leaves this to the decision of the chief engineer, or his assistant. And these officers, having made their estimates by measuring the excavations, they have thereby determined this to be the meaning of the contract, and the appellees are bound by this decision. It is further urged by the company that the usage of itself and other companies, in the light of which usage the contract must be interpreted, has always been to measure the excavation, and not the embankment, in settling with contractors; and the appellant further relies upon the fact, that Henry & Dilley settled with it upon estimates based upon a measurement of the pits, and thereby ratified the action and decision of the engineers.

A question, preliminary to the consideration of these defences, arises upon an objection taken by the appellees to the right of the company to make them under the general denial—the only answer filed by it to the petition. We think that so far as the defences founded upon the award of the engineer, the provisions of the specifications, and the usage of railway companies are concerned, they could properly be urged under a general denial, as applied to the allegations of the petition. The petition set forth the contract, including

the agreement as to what the engineer should decide; it sets forth his decision, but alleges that it is not based on such measurement of the rock as appellees are entitled to, under their contract, and such as is usual and customary under like contracts.

A denial of these allegations put the plaintiffs below upon proof of their contract, and of the failure of the engineer to comply with it in making the measurement, and of the usage alleged by them. Evidence that no such contract was made, or that the engineer was authorized by its terms to determine how the measurement should be made, or that the specifications, which the petition alleged were part of the contract, provided that the measurement should not be of the embankment, as claimed in the petition, but of the pits, or that the usage was contrary to what it was averred in the petition to be, would be in denial of its allegations, and admissible under the general denial. But, if the defendant proposed to show that, admitting the allegations to be true, the plaintiffs had ratified and endorsed the action and estimates of the engineer, by accepting and settling by them with the company, without reservation or protest, this would amount to a plea of confession and avoidance, and was not admissible upon the only answer set up by the defendant to the petition. Had objection to this evidence been made, it should have been excluded.

It is proper, however, to add, that the proof received by the court upon this question does show that, upon making the final settlement, the chief engineer told the appellees that if his men had made a mistake, or errors in measurement, it should be corrected. The estimates were, therefore, accepted with this reservation, and were not ratified by the contractors.

We think the evidence shows, with sufficient certainty, and without contradiction, that the estimates were furnished to the contractors, although they were not attached to the contract. It is true that Mr. Dilley, one of the contractors, says that he never saw them until within a month or two of the time when the contract was completed. But it further appears that he was not the person who supervised the work, or who staid upon the ground when it was being performed. His partner, Henry, did this, and he was the person most likely to be in possession of the paper. It was not found among his papers when they were turned over to Mr. Dilley; but this does not, of course, furnish satisfactory proof that he had never had this particular paper. On the contrary, it is hardly probable that contractors, who were to receive several hundred thousand dollars, provided certain work to be done by them conformed to specifications to be furnished them,

and who might lose large sums if it did not, would undertake the performance of the work in utter ignorance of these specifications. It is difficult for belief to be accorded to a thing so utterly improbable, especially when not sustained by positive testimony. Major Converse states, positively, that the specifications were delivered to Henry & Dilley. These, together with blank forms of contracts, were furnished them to use with their sub-contractors, and that these, thus used, were the ones introduced, on the trial, by the appellant company. This positive testimony is strengthened by the statement of one of the sub-contractors, who told Dilley that there were, or had been, specifications. Opposed to these and other convincing proofs that one of the contractors, at least, had been furnished with the specifications, is the mere negative testimony to the effect that the other contractor had not seen them, and did not know that his partner had.

The specifications having been furnished, the question is, do they clearly provide that the number of cubic yards of rock hauled shall be determined by measuring the pit or excavation from which it was taken? We think the language relied on to show that they do, is, by no means, clearly to that effect. As interpreted by Major Converse, the appellant's witness, the particular clause in the specifications heretofore recited, refers to hard rock, whilst the next succeeding clause refers to earth when removed and embanked. But, upon the face of the specifications, no such distinction is made. Both sentences are in the same connection, and apparently refer to the same thing. The use of the word "usually" shows that the measurements were not always to be made in the pit, but that the general rule upon this subject was to admit of exceptions. What these exceptions were, are not stated. It cannot be deduced, from the face of the instrument, that the only exceptions were to be when dirt or earth was excavated and embanked. It would be a forced construction to hold that the specifications are to be read as if they provided that measurements of quantities will always be made in the cuts or pits from which the material has been taken, except when the material is earth; and, in such cases, if the embankment is measured, the engineer will estimate the actual quantity, and make no allowance for shrinkage. This is the construction given by Major Converse, but we should have to appeal to outside circumstances to sustain it. Upon the face of the instrument, the language refers to all kinds of material, and contemplates exceptional cases, in which measurement shall be had otherwise than in the excavations.

As the specifications, themselves, do not show that the measurement was to take place in the cuts, in all cases, but that there are to be

exceptions to this rule, which are not stated in the specifications, we shall have to determine those by outside testimony, by usage, or by the practice of the company in like cases.   The testimony upon this subject is conflicting.   Whilst Major Converse states positively that it was the universal habit of the company to estimate hard rock by measuring the pits from which it was taken, the testimony of Springhall, the division engineer, is to the contrary.   He shows that he, as division engineer, always measured it in the embankments, and had so measured the work of Henry & Dilley, for the first four months, and until he was ordered by the assistant engineer to measure it in the excavations.   His evidence is sustained by another engineer of the company, who says that he never saw the provision of the specifications we are now considering applied to such cases as the present.   A subcontractor, under Henry & Dilley, who had himself worked under contracts made directly with this company, testified that it had always estimated his work by measuring the embankment, and that he did work, both in dirt and in solid rock.   It is not our province to reconcile this conflict of testimony.   It is enough that there is sufficient to warrant the conclusion that the provision as to measuring in the cuts was not enforced when solid rock was the material taken from them.

What we have here said as to the evidence upon the subject of usage, settles, also, in favor of the appellees, the position taken by them, that, by the usage and custom of this and other companies, they were entitled to have the rock excavated and transferred by them, estimated by embankment measure.

This brings us to the main and important point in the case, viz., were the estimates made by the chief engineer binding upon Henry & Dilley, under that clause in the contract which submits to that officer the decision as to the amount and quantities of the several kinds of work performed by them under the contract?

There is no doubt but that when parties to such a contract submit such a matter to the decision of the engineer, his determination is final and conclusive, unless, in making it, he has been guilty of fraud, misconduct, or such gross mistake as would imply bad faith or a failure to exercise an honest judgment.   M. & P. R'y Co. v. March, 114 U. S. 549.   But his decision must be in accordance with the contract. The parties agree, as they did in this case, that he shall determine as to the amount of the work done by them under the contract, not that he shall make a different contract for them.   He decides under the legal construction of the contract, not upon such construction as he may choose to give it.   He is not made the arbitrator, to whom is to be

referred differences as to the meaning of the contract, and he cannot adopt rules of measurement that it does not authorize.

Hence, if the contract provided that the appellees should be paid according to embankment measure, he would have no right to say that they should be paid by excavation measurement.   Controversies as to the meaning of the contract might have been submitted to him, but, unless done in plain terms, the courts, and not the engineer, must decide them.   The parties referred questions of quantities and amounts to him, doubtless, because it was in the line of his profession to make accurate calculations as to such matters.   It cannot be presumed, in the absence of express provisions to that effect, that they intended to go further, and permit him to pass upon the law of the contract, and construe it by any arbitary rules he might choose to prescribe.   None of the decisions to which we are referred by the appellant go so far as to allow the engineer to vary the contract, or to decide as to its meaning or intent.   M. & P. R'y Co. v. March, *supra*; Herrick v. V. C. R'y Co., 27 Vt. 673; Kidwell v. B. & O. R'y Co., 11 Gratt. 676; Kihlberg v. United States, 97 U. S. 398 ; Sweeney v. United States, 109 U. S. 618.

There are decisions, however, to the effect that where the engineer is the party whose estimates are to govern, he must not base them upon an erroneous view of the contract; if so, his estimates will not conclude the parties.   McAvoy v. Long, 13 Ill. 147; Alton R'y Co. v. Northcott, 15 Ill. 49; Kistler v. R'y Co., 88 Ind. 460.

In determining whether the engineer, in this case, made his estimates under a correct view of the contract, we do not derive much light from the contract itself.   However, the expression in the item, out of which this controversy arose, viz., "rock bank, if hauled," would seem to imply that the rock when hauled and embanked was to be estimated.   The words, "bank" and "embankment," must have been used as synonymous; for the term "bank" could hardly be applied, generally, to a ledge of rock imbedded in the soil

It has been held under a similar contract, when rock was to be excavated for the purpose of being used as "rip-rap," the rock, after being placed in position as "rip-rap," should be measured, although the contract did not so provide.   It was said in that case, that, if the term "embankment" had been used, *i. e.*, if the rock had been removed to be placed in embankment, this should have been measured, and not the excavation from which it had been taken.   Wood v. Vermont Central R'y Co., 24 Vermont 608.   That case seems quite in point with the present.

But, if we could derive no light whatever from the contract itself,

we should have to read it in the light of the practice and usage of the company, and we have seen that there was abundant proof to show that its custom was to measure as contended by the appellees. Not only so, but it adopted the same rule of measurement for several months in making estimates under the present contract. These estimates were reported monthly to the chief engineer, or his assistant, and, upon them, were based such estimates as were furnished to the contractors. The cuts were not measured at all for solid rock hauled. The estimates furnished the contractors could not, therefore, have been based upon such measurement.

If the size of the cuts were ascertained at all, it was not by measuring them, but by deducting a percentage from the measurement of the embankments. This, according to the chief engineer's statement, was a very uncertain way of ascertaining the amount excavated, as it could not be told whether forty or fifty per cent. should be deducted. We can but conclude from the whole evidence that the court below did not err in adopting the appellees' construction of the contract, and giving them judgment for one hundred and nine thousand one hundred and twenty-five cubic yards, for which the company had failed to pay, together with the ten per cent. *bonus* thereon.

As to the claim of the appellees, that they should have recovered judgment for $19,062, for one hundred and sixty thousand five hundred and ninety-five cubic yards, hauled by them for a greater distance than one hundred feet, we have no sufficient evidence upon which we can determine as to what amount they should be allowed on this account. We know the number of yards hauled, and the price per one hundred feet to be paid for it, but we do not know how far it was hauled, or what portion was hauled one distance, and what another. We see no reason, therefore, for disturbing the finding of the court against the appellees upon this question.

We think, however, that the court should have allowed interest from October 15, 1882, instead of January 1, 1883. The work was performed under a written contract, by virtue of which the money became due on the first date mentioned. It was not an open account upon which interest is to be calculated from January 1, after the accrual of the indebtedness. The judgment will, therefore, be reformed, so as to make the principal sum recovered below bear interest from October 15, 1882, and in other respects it will be affirmed.

REFORMED AND AFFIRMED.

[Opinion delivered June 25, 1886.] .