Bryan H. COUEY, Appellant,

v.

ARROW COACH LINES, Inc., Appellee.

No. 10372.

Court of Civil Appeals of Texas.
Austin.

Feb. 22, 1956.

Rehearing Denied March 14, 1956.

Bradbury, Tippen & Brown, Abilene, for appellant.

Truman Roberts, Hico, H. W. Allen, Hamilton, for appellee.

HUGHES, Justice.

This suit arises from a conventional arbitration under an agreement between Arrow Coach Lines, Inc., hereinafter called "Arrow" and Local Division No. 1313, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, A.F.L., hereinafter referred to as the "Association."

The employee whose discharge by Arrow provoked this proceeding is appellant Bryan H. Couey of Abilene, Texas.

The award of the arbitration panel was in favor of appellant.[1] Suit in the court below was instituted by Arrow for the purpose of vacating such award. Motions for summary judgment were made by both parties. The motion of Arrow was granted, the motion of appellant denied. Judgment was rendered accordingly.

Since under settled legal principles later stated, we believe that our decision herein must turn upon a proper answer to the question of whether or not the award of the arbitration panel is within the scope of the controversy submitted to it, we will fully treat the procedural aspects of the case and minimize factual matters pertaining to the merits.

On September 13, 1954, Arrow notified appellant, who had been in its employment about 11 years, of his dismissal and gave these reasons:

"Based on your record from June 1st, 1953, to date, you are hereby permanently suspended as an employee of this Company. Our records reflect three (3) instances of excessive speed, one instance of reckless driving, smoking while driving, and various acts of hostility toward this Company."

On September 16, 1954, the Association, acting for appellant, requested that Arrow set a time and place for a hearing regarding appellant's discharge. This hearing resulted in a confirmation, by Arrow, of appellant's dismissal. We quote a portion of Arrow's letter, dated September 27, 1954, so advising appellant:

"With the understanding that the company reserves its right to object to any arbitration in the matter of any of the published rules of the company, as well as reserving all our rights under our contract and provisions as they relate to the matters presented in this hearing, I have again carefully considered the case of Mr. Couey, including a re-examination of each of the matters contained in his records. We are of the opinion that any of the matters contained in this man's records furnish sufficient cause for dismissal."

We quote now the relevant provisions of the contract between Arrow and the Association:

"In accordance with the established Company policy, an Employee will not be disciplined or dismissed from serv-

---

1. One member, Mr. J. V. Hammett, dissented.

ice, nor will entries be made against his record without cause."

Provisions are then made for a hearing before and decision of the General Manager or some other official of Arrow following which it is provided:

"If the Employee so disciplined, discharged or against whose record entries have been made, is dissatisfied with such written decision, he shall be entitled to demand arbitration thereof, * * *."

Then follows directions for selecting the arbitrators and for the hearing to be conducted by them from which we quote:

"All parties at interest may appear at such hearing in person or by representatives, and there present all matters pertinent to the controversy in person, by witnesses and in such order as may be designated by the arbitrators. * *

"A written decision of the controversy shall be made and signed by a majority of the arbitrators, with copies thereof to Company and Association, within twenty (20) days after the hearing is concluded, and such written decision by the arbitrators shall be final and binding upon all parties, their successors and assigns."

The contract further provides:

"If as a result of the arbitration, the discipline or dismissal of an Employee is found to have been without sufficient cause, the record of the Employee shall be made to conform to the final decision of the Board, and if time has been lost, the Employee shall be paid for any loss of earnings which he may have suffered by reason thereof, or so much of such loss as may be finally determined by the Board of Arbitration to be due to him."

Other provisions which may have a bearing are:

"No arbitration hereunder and no arbitrator or arbitrators shall change or add to any term or provisions of this contract."

"The Association agrees that it has full notice of the rules and regulations of the Company."

"Failure on the part of the Company from time to time or at any time to enforce any rule or regulation shall not be deemed as a waiver thereof, nor bar the enforcement of such rule or regulation for any subsequent violation of the same."

"It is understood and agreed that the provisions of this agreement shall be subordinate to any present or subsequent federal, state, or municipal law or regulation to the extent that any portion hereof is in conflict therewith, * * *."

Upon the hearing before the arbitrators it was stipulated:

"This arbitration is held pursuant to the terms and provisions of the contract dated April 1, 1954, between Arrow Coach Lines and Local Division No. 1313, of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, A. F. of L. All prerequisites to this arbitration as to whether Bryan H. Couey was dismissed by Arrow Coach Lines for cause, have been fully complied with and this matter is now properly submitted to this board of arbitrators. Mr. Bryan Bradbury of Abilene, Texas, was selected by the said Bryan H. Couey and his representatives to serve on such board and J. V. Hammett of Lampasas, Texas, was selected by Arrow Coach Lines to serve on such board and the Hon. Frank Tirey was selected from a panel of three arbitrators named by Hon. Ben H. Rice, District Judge of the Western District of Texas, Austin Division, all in accordance with the terms of said contract and it is agreed that the validity of this board and arbitrators and selection of each mem-

ber thereof is valid and binding all parties hereto for all purposes."

As indicative of how the parties and the panel understood and construed the nature of the hearing we quote from the record:

"Mr. Lynch: (for Arrow) Mr. Tirey, I believe we might get the union representatives, who have had much more experience and are more familiar with arbitrations than we are, to state the facts that in these informal hearings of this type that the Rules of Evidence are not followed, and that hearsay or anything else is allowed in the record.

"Mr. Estes: (for the Association) That is correct. In our arbitration cases they do not follow the strict rules of evidence and a wide latitude is allowed, and then the impartial arbitrator then makes up his own mind relative to the case and the weight that it will bear.

"Mr. Tirey: I am going to hold it up for the time being and you might take it up with the panel again and then we will work it out.

\* \* \* \* \* \*

"Mr. Hammett: (for Arrow) Mr. Tirey, wouldn't it probably expedite our hearing to let that go in subject to your later ruling on it?

"Mr. Tirey: Well, there isn't much difference. I don't see that it would make any difference anyway because there is not any appeal from our decision, as I understand these rules.

\* \* \* \* \* \*

"Mr Tirey: Were you present when he had this conversation with this lady that you were talking about?" A. No, sir. Mrs. Cofer is President of the Company and she reported the conversation to me as her general manager.

"Mr. Tirey: Are there any objections?

"Mr. Bradbury: (for appellant) Well, the rules that we are operating under, it is just kind of wide open, Judge. We may have a little hearsay ourselves so I can't be too technical.

"Mr. Tirey: All right, we will let it go, but I can't be very scientific in my rulings that way."

We pause to observe that if all hearsay evidence was eliminated from this record little else would remain.

The rules of Arrow the violation of which is charged to appellant are:

"5. Obedience to the Law.—Operators shall be familiar with, and must obey all laws and traffic regulations, including those of the Interstate Commerce Commission, the Railroad Commission of Texas, State Highway Laws of Texas, and the laws of the counties and towns through which they may operate. Such laws and traffic regulations must be obeyed and any violation thereof will be considered a violation of the Company rules."

"14. Speed on the Open Highway.— Never, under any condition, operate a bus above the legal speed limit. Never, under any condition, operate a bus faster than can be operated safely, regardless of the speed limit."

"34. Hostility to the Company.— Words or acts of hostility to the Company, its officers, or agents, or service, equipment, or its conditions, or willful disregard of its interests by employees of rules and regulations or criticism of the Company to other than supervisors or officers is positively forbidden, and will be followed by dismissal."

"52. Use of Tobacco.—Operators are not permitted to use tobacco in any form while operating coaches, collecting tickets, accepting or discharging baggage to passengers, or while giving information to passengers. At other times, the use of tobacco is permitted."

Rule 44 provides:

"44. Suspension and Dismissal.—Disobedience of orders, violation of rules, or neglect of duty, will always be considered sufficient cause for disciplining or dismissal. The rules herein contained in the Drivers' Manual must be followed and failure to do so shall be termed reason for dismissal."

With respect to the evidence on the merits the record reflects that appellant admitted smoking on duty and speeding. He denied the reckless driving charge. As to the "hostility" charge appellant admitted that he violated a company rule in talking with fellow employees rather than with an official of Arrow when he had anything "to report" but the record, on the whole, is subject to a fair and reasonable interpretation that he did not show hostility to Arrow or its officials.

The evidence also shows that Arrow did not interpret its rules as requiring dismissal of an employee who violated a rule. Proof of this lies in the admitted fact that warnings were issued to employees for acts which, under the rules, authorized dismissal.

Rules of law applicable to contractual arbitrations are plain and well settled. They require that the arbitration be conducted and determined in accordance with the contract. They forbid an attack on the award made except for fraud, misconduct or such gross mistake as would imply bad faith or a failure to exercise an honest judgment. Galveston H. & S. A. Ry. Co. v. Henry, 65 Tex. 685. An award in excess of the authority conferred by the agreement is void. Fortune v. Killebrew, 86 Tex. 172, 23 S.W. 976; Evans v. De Spain, Tex.Civ.App., Austin, 37 S.W.2d 231.

Our duty, under this record, as we conceive it, is to construe the contract between Arrow and the Association and determine whether the award made is within or beyond the scope of the terms of such contract and the reference made by the parties thereunder. Callaway v. Albin, 114 Tex. 5, 261 S.W. 372.

Appellee has a cross point to the effect that since appellant admitted that he smoked on duty and drove in excess of the statutory limit that the award evidences bad faith on the part of the Board since Arrow rules provide that such acts are prohibited and shall constitute cause for dismissal.

As we construe the record the majority of the Board entertained the opinion that under the contract it was their prerogative to find the facts and assess or withhold punishment; that they had the same latitude in enforcing the company rules that Arrow had and that they were invested with a discretion as broad as Arrow had assumed. The hearing was conducted in this atmosphere. For these reasons we do not interpret the award as finding that appellant did not smoke on duty or that he did not speed. He freely admitted these charges. We interpret the award as simply finding that these infractions of Arrow's rules did not justify appellant's discharge and that the Board, like Arrow, was not required to discharge or otherwise punish appellant.

Arrow's position is frank. It contends that one puff on one cigarette by one of its drivers while on duty is sufficient cause for his dismissal under the contract between it and the Association because its rules so provide.

If this is correct then there was never anything to arbitrate in this case because appellant never denied but freely admitted that he had smoked while on duty.

In construing the contract providing for arbitration we have given no consideration to the attempted reservation embodied in Arrow's letter to the Association dated September 27, 1954, from which we have quoted above. Our reasons for this are that such letter simply evidences an ex parte effort to modify the terms of the previously executed and currently existing contract between the Association and Arrow and there is no evidence that the Association ever consented to such modifi-

cation.[2] Furthermore the stipulation between the parties recites that the arbitration is pursuant to the terms of the formal contract and makes no reference to any modification of that agreement.

■ The contract provides that no employee shall be dismissed "without cause." "Cause" is not defined in the contract.

The contract provides that dismissed employees "shall be entitled to demand arbitration thereof." The right to demand arbitration, of course, includes the correlative right to receive arbitration.

The contract makes provision for the employee if as a result of the arbitration he is found to have been dismissed "without sufficient cause."

The only provisions in the contract which cast any doubt at all upon the extent of authority vested in the arbitrators in this instance are the provisions in which the Association acknowledges notice of Arrow's rules and that failure to enforce a rule shall not bar or waive future enforcement.

Our conclusion, reached with considerable doubt, is that the arbitration board was vested, by virtue of the contract, with the same authority and discretion as Arrow possessed with regard to appellant's discharge.

■ If in every instance an admitted or indisputably proved violation of a company rule operated in a mandatory manner upon the arbitrators in discharge cases the Association would have gained little by their agreement to arbitrate such cases. This record shows that the rule against smoking is habitually violated. The rule against speeding, if technically enforced, would give Arrow unrestricted powers of discharge because everyone who drives a motor vehicle knows that in passing or in driving at the approximate maximum speed as buses must do in order to maintain reasonable schedules the literal letter of the law is breached.

If the agreement to arbitrate, the right of the arbitrators to find that the dismissal was "without just cause" and the agreement that the award should be "final and binding upon all parties" were all subordinate to Company rules and to their inexorable application and control we believe the contract should have so stated. Since it does not we are of the opinion that such intent cannot be fairly inferred from the nature of the agreement and the language used.

■ As reflecting our thought on this subject we quote from an Article by Guy L. Horton, Attorney and Arbitrator, Stillwater, Oklahoma, in Vol. 9, Southwestern Law Journal, p. 332:

"A discharge case may involve only the question of guilt, for the offense may be of a type that, if committed, no reasonable person would contend that discharge was not the proper penalty. Other cases will involve the issue of whether discharge is the proper penalty for an offense proved or admitted. Where this is the question the arbitrator must of necessity weigh the nature of the offense against the severity of the penalty of discharge. In doing this he must give consideration to the rule that it is primarily the function of management to decide upon the proper penalty but that this does not mean that the company's discretion can never be questioned. The company's discretion must not be abused, but must at least be reasonably and fairly exercised.

"The correct answer may be found in the company's actions in the past in regard to similar wrongdoing, but even this principle has its imperfections. In failing to assess the penalty of discharge in all cases involving a particular infraction, the company may either discriminate among employees or subject itself to such a charge. But to hold that management must always assess the same penalty for the same

2. The contract makes specific provision for its modification and there is no evidence of compliance with these provisions.

offense ignores the fact that there may be either mitigating or aggravating circumstances. The rigid application of the same penalty for the same infraction without regard to all the circumstances of the case is not to the best interests of either management or the employees. The test is that of fairness and consistency, considering the facts of the particular case.

"The question of whether the penalty of discharge is appropriate punishment cannot be generalized. As stated by one arbitrator, what constitutes 'just cause' must be decided on the basis of the individual merits of each case."

We believe this record justifies the conclusion that the parties to the arbitration agreement contemplated proceedings of the nature so excellently discussed by Mr. Horton.

The judgment of the trial court is reversed and judgment is here rendered sustaining the award of the arbitrators.

Reversed and rendered.

GRAY, Justice (dissenting).

I am unable to agree with the conclusion reached by the majority opinion in this cause and respectfully register my dissent.

The facts and issues are clearly set out by Justice HUGHES and I find no fault in that respect. By the contract the Association acknowledged notice of the rules of the Company and agreed that the failure of the Company at any time to enforce any rule "shall not be deemed as a waiver thereof" nor a bar to its enforcement for any subsequent violation.

It is my opinion that the authority of the Board of Arbitration was limited to a determination of the issue of "just cause" for dismissal on a factual basis and did not permit a finding from admitted violations of the Company's rules that just cause for dismissal did not exist. A jury's verdict or a court's judgment finds no support if it is rendered against admitted facts. Under the contract here the rules of the Company and a waiver thereof were not matters to be considered by the Board and its award should be measured by the same rules that govern jury verdicts and judgments.

To uphold the decision of the Board here has the effect of rendering the Company powerless to enforce its rules against speeding which is a violation of the State law, is a hazard to the safety of the Company's passengers, to its civil liability and perhaps to the goodwill of the traveling public. It simply takes control of the speed of its buses away from the Company and places it in the control of the driver who in this instance is an admitted violator of the law and the rules. The award is contrary to the undisputed evidence, the rules of the Company and as noted supra compels the Company to condone violations of the law.

It is my opinion that the judgment of the trial court should be affirmed.

HUGHES, Justice.

■ We did not specifically discuss appellee's motion for summary judgment in our original opinion. Its point was that since appellant did not deny the grounds upon which the motion was based that it should have been granted. We have examined the motion and find that it incorporates by statement or reference the entire record made before the arbitrators. The right to summary judgment, on the motion is, as we understand it, a question of law. It was not incumbent on appellant to file denials or counter affidavits under these circumstances in order to resist the motion. There was nothing to deny or verify.

■ Neither did we in our original opinion discuss appellee's point to the effect that to enforce the award of the arbitration board would be contrary to public policy, this under the theory that the award sanctions violation of State laws and rules of regulatory bodies.

The award does not sanction such violations. It merely evidences the conclusion that the infractions proved or admitted do not justify appellant's discharge. Arrow

has many times reached the same conclusion.

The collateral question of public policy, which in our opinion is not involved in this case, if reached would disclose, insofar as we have been able to find, that no pertinent statute or rule or regulation of any State or Federal agency requires an employee's discharge under the facts of this case. There simply has been no expression of public policy to such effect and we are not inclined to announce one to the extent advocated by appellee.

As extrinsic proof of the ambiguous nature of the contract between Arrow and the Association we quote from the written argument which Arrow filed with the arbitrators after the hearing:

"It is therefore true that the question of whether Couey was discharged for cause or not has not been submitted to this arbitration Panel for original action. On the contrary, the submission of such question to this Panel is in the nature of an appeal, the purpose of which is to review the action of the general manager, this method of review being in lieu of review by a court or the NRLB.

"The only submission to this Panel is the question of whether Couey was discharged for cause or not, or in other words, whether the general manager abused his discretion in the matter. There is a most apt analogy between this review and the review of discretion exercised by an appellate court over a trial court."

Arrow has apparently abandoned this interpretation of the contract as it is not presented here.

■ In regard to the statement made by Associate Justice GRAY in his dissent that our opinion takes the control of the speed of buses away from the company and places it in the control of the driver we call attention to the evidence that Arrow has its buses equipped with governors which con-

trol their speed. Mr. I. F. Bay, Arrow's General Manager, testified:

"Q. Now, do you have or maintain governors on these busses? A. Yes, sir.

"Q. Now, who is it that puts them on or services them or sets them or looks after them? A. The garages.
* * * * * *

"Q. What is the purpose of those governors then? A. To control the RPM of the motor and not the top speed of the bus.

"Q. Well, to what degree or to what extent will that governor govern the speed of the bus? A. It will cut your motor out at whatever speed, whatever RPMs you set it at, but that is not shown on your speedometer, that is the RPMs, and that is a different thing.
* * * * * *

"Q. Can you set that governor to where the bus will not exceed 60 miles an hour? A. It would be possible to do it but then you would lose your power.
* * * * * *

"A. We don't set them by speed at all. We set them by RPMs.

"Q. All right, how many RPMs will that thing have to make to go 60 miles per hour? A. I don't know the exact relationship there.

"Q. Then the governor on that bus is within the control of the mechanics in the shop that the bus operates out of? A. Yes, sir."

Appellant testified:

" * * * If it is a question of whether or not they want to stop this speeding then all they have got to do is to set the governor to where they won't go that fast. It is a very simple operation."

Mr. E. P. Swift, one of Arrow's operators, testified:

"Just one question, Mr. Swift. You understand now that if you get caught speeding again you will be discharged under Mr. Bay's statement, do you understand that? A. Yes, sir, if that is the way they want it that is all right. I will be perfectly frank with you, anytime they tell me to drive 55 I will drive 55."

To say that the company has lost control of the speed of its buses and placed it in the hands of the operators is to ignore the initial authority of the company to discharge and is to assume that if there is an arbitration that the arbitrator named by the Federal District Judge for the Western District of Texas will in every instance be under the control of the discharged employee.

We also labor under the very definite impression that the police officers in this State have an important part in enforcing our speed laws, the driver's lack of consent notwithstanding.

The motion is overruled.

Motion overruled.

GRAY, J., dissenting.