OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION, AFL–CIO, et al., Appellants,

v.

LONE STAR PRODUCING COMPANY, Appellee.

No. 6935.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 7, 1959.

Rehearing Denied Jan. 18, 1960.

Mullinax, Wells, Morris & Mauzy, Dallas, for appellants.

Warren J. Collins; Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

DENTON, Chief Justice.

This is an appeal from a declaratory judgment which declared that a certain labor arbitration award was null and void and refused enforcement of the arbitration award. The appellant, hereinafter referred to as the union, perfected its appeal to the Court of Civil Appeals in Dallas and subsequently the Supreme Court transferred the case to this Court for determination.

It is undisputed that at all times material here there was in effect a collective bargaining contract between the union and the company. In fact, the appellant union has been the bargaining agent with the appellee company for several years.

This case arose over a grievance filed by a union member employee of the company's Carthage plant. The Carthage plant, known as a "cycling plant," has equipment to extract and process natural gasoline and other liquid hydrocarbons from natural gas and then to pump the gas through gas pipe lines for consumers or back into the gas fields to maintain pressure in the fields. As the plant was originally set up, it was operated around the clock in eight-hour shifts or tours of duty. It operated each tour by an "operator," "assistant operator," and an "operator helper." Because of the reduced pressure and production at the Carthage plant, the company, on February 2, 1958, in a unilateral action, eliminated the position of "operator helper" on each tour or shift. Since that date the company has operated the Carthage plant by only two men for each shift, namely the operator and an assistant operator. The three union members who formerly worked as operator helpers timely filed a grievance contending the unilateral action on the part of the company constituted a change in classification and that such a change could be made only through collective bargaining. The company refused to restore the operator helper positions, and the union demanded that the dispute be arbitrated.

The company at first refused, then proceeded to arbitrate subject to reserving its objection on the ground that the subject matter of the grievance was not arbitrable.

The arbitration procedure was carried out and hearings were held before the arbitration board. The majority of the three arbitrators (a union representative and the impartial third member) held that the reallocating of the duties of the three operator helpers among the remaining operators and assistant operators constituted "changes in classifications" under Article XIV, Paragraph 5 of the collective bargaining agreement, and that such action by the company could not be carried out without prior negotiations with the union. The arbitration award further ordered operator helpers be restored to their prior positions and "be made whole" according to the terms of the agreement. The company then filed this proceeding in the district court, asking that the arbitrators' award be set aside. After a hearing before the court without a jury, the trial court entered the declaratory judgment setting aside the arbitrator award. The union appellants bring forward seven points of error in complaining of the trial court's action.

A better understanding of the controversy here requires an examination of several articles of the collective bargaining agreement. Article V, entitled "Grievance Procedure," contains the following provisions.

(f.) "If the grievance is one based upon an alleged violation or an alleged misinterpretation of this agreement and it has not been settled to the satisfaction of the Workmen's Committee at the conclusion of the procedure outlined in this Article V, such grievance shall then be subject to arbitration in the following manner * * *"

Article XIV, 4. "The usual and normal rights of management, except as specifically limited by the provisions of this agreement, shall be reserved to the company. Such rights of the company shall not be used in any manner so as to discriminate against the union."

5. "Nothing contained in this agreement shall preclude the right of the union or the company to negotiate for changes in salaries, wages and classifications through the process of collective bargaining."

The articles of agreement entered into by the union and company does not contain a list of detailed job classifications setting forth the duties of the various employees. The record does reflect that a supplemental agreement had been entered into from time to time setting up hourly and monthly wages in various named jobs at the Carthage plant. Hence, we can only conclude that there is no provision in the collective bargaining agreement itself as to whether the duties of a particular employee entitled him to be classified in a particular category. However, the arbitrator found that past custom and practice in the Carthage plant had dictated that certain employees perform certain duties.

Appellant union contends in substance, as reflected by its first five points of error, that the trial court erred in declaring the arbitration award null and void because the unilateral action of the company in abolishing the jobs of operator helpers and assigning to the operators and assistant operators the operator helpers' duties constituted a change in classifications, therefore, such action was subject to arbitration under the appropriate provisions of the collective bargaining agreement set out above.

It is the position of the company that the action in abolishing the job of operator helper at the Carthage plant was merely the rearrangement of duties among two men instead of three and did not con-

stitute a change of classification referred to in Article XIV, Paragraph 5, of the agreement. The company further contends that due to the fact that job specifications or classifications were omitted from the agreement, that its action in combining the duties of the operators was permissible under the so called management clause as set out in Paragraph 4 of Article XIV. Since the decision of the United States Supreme Court in Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the law is clear that in suits for enforcement of collective bargaining contracts the Federal interpretation of the law will govern. The Court there held that under the Taft-Hartley Act, 29 U.S.C.A. § 185, the Federal Court was authorized to fashion a body of relevant federal law for enforcement of collective bargaining agreements subject to the Act, hence Federal Court decisions must be looked to, to determine the controversy before us here.

■ We recognize the fact that our Courts look with favor upon arbitration procedure in labor contracts. Such proceedings are primarily designed to prevent strikes and other expressions of unrest by prompt and equitable settlement of disputes. Arbitration is also designed to avoid the formalities, delay and expense of ordinary litigation. In any event, the courts recognize, at least in theory, that arbitration of labor disputes should be encouraged. 24 A.L.R.2d 755, and cases there cited. Bearing this prevailing philosophy in mind, we must determine here whether or not the dispute between the union and company is arbitrable.

The union strongly maintains that the arbitration award cannot be attacked except for fraud, misconduct, or such gross mistake as would imply bad faith, or a failure to exercise an honest judgment. For the authority sustaining their position, the union cites Couey v. Arrow Coach Lines, Tex.Civ.App., 288 S.W.2d 192 (no writ history), and Galveston, H. & S. A.

Ry. Co. v. Henry, 65 Tex. 685; Haddad v. Bagwell, Tex.Civ.App., 317 S.W.2d 781; Alderman v. Alderman, Tex.Civ. App., 296 S.W.2d 312. In these cases the subject matter of the controversies were clearly proper subject matter of an arbitration proceeding. The courts there were not confronted with the arbitrability of the grievance. We therefore hold that these cases are not controlling in the case before us. The company conceded the disinterested arbitrator, Mr. Clyde Embry, was an arbitrator of wide experience and legal ability. His integrity is not questioned. If the questions of fraud, misconduct or bad faith of the arbitrator were in issue here, the case would cause no serious concern. As we see it, no such question is involved here. The question before us is whether or not the grievance filed by the company employee is an issue which the collective bargaining agreement requires to be determined by arbitration.

■ Whether a dispute between parties to a collective bargaining contract is arbitrable as within the scope of the arbitration provision contained therein is for the Court, and not for the arbitrators, to determine. 24 A.L.R.2d 766, and cases there cited. Also, see Lodge No. 12, etc., Machinists v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467; Local No. 149, etc., Engineers v. General Electric, 1 Cir., 1957, 250 F.2d 922; Local 205, etc., Electrical Workers v. General Electric, 1 Cir., 1956, 233 F.2d 85.

■ In their reply brief, appellants cite the case of Local 1912, etc., Machinists, v. United States Potash, 10 Cir., 1959, 270 F.2d 496. In that case the grievance grew out of a company subcontracting of work on its premises which fell within a union employee job classification set up in the collective bargaining agreement. The contract there provided for arbitration of such "conditions of employment affecting the employer-employee relationship as are specifically provided for in the terms of the agreement." The Court there

held that subcontracting was an act affecting the employer-employee relationship in that it had the effect of destroying the union as an effective bargaining unit. We do not consider this to be an issue in this case. The eliminating of one job on each shift and having those duties performed by two other regular employees could not be said to destroy the union as an effective bargaining unit. We do not think the Potash case is controlling here.

 Was the act of the company in abolishing the job of operator helper and re-assigning his duties among the two remaining employees on each shift a "change in classifications" such as to require the company and union to arbitrate under the terms of the agreement? As has already been indicated, we are convinced this question must be determined as a matter of law by the Courts. Local 205, etc., Electrical Workers v. General Electric, 1 Cir., 233 F.2d 85. It is clearly not within the province of an arbitrator to determine the arbitrability of agreements brought before him. We are not concerned here with whether or not Mr. Embry was correct in his conclusions and findings set out in his award. We are called on to determine whether or not there was a contract agreement to submit the grievance in question to arbitration. After carefully reviewing both parties' able briefs, as well as the cases cited, we are convinced Local No. 149, etc., Technical Engineers, v. General Electric, 1 Cir., 250 F.2d 922, is controlling here. Here, as in the above cited General Electric case, we find no language in the bargaining agreement which spells out the various duties or job descriptions under different classifications of the employees. We therefore hold that the act of the company in abolishing the "operator helpers" position was not a change in classification under the terms of the bargaining agreement. It follows that the grievance was not arbitrable under the provisions of the bargaining agreement and that the trial court was correct in declaring the arbi-

trator's award null and void. Appellants' Points of Error One through Five are therefore overruled.

In the light of our disposition of the first five points of error, we do not deem it necessary to discuss at length appellants' sixth and seventh points of error. Suffice it to say, if the district court is the forum to determine the question of arbitrability of a particular grievance, it has the authority and the duty to hear evidence other than that presented to the Board of Arbitration. It also follows that the district court should review the case, in effect, as a trial de novo in order to determine the arbitrability of the grievances.

We believe that the various points of error brought forth by appellants present no error, and that the judgment of the trial court should be affirmed.

Affirmed.