Elvis B. FAUBION, Appellant,

v.

Gladys A. CORDER et al., Appellees.

No. 5042.

Court of Civil Appeals of Texas, Eastland.

July 14, 1977.

Rehearing Denied Aug. 18, 1977.

Gay & Latting, Joseph Latting, Austin, Geron B. Crumley, Lewis & Crumley, Lampasas, for appellant.

Hammett & Cavness, J. V. Hammett, Lampasas, for appellees.

WALTER, Justice.

This is a summary judgment case. Gladys A. Corder and Marguerite Christine Dillon filed suit against their brother, Elvis B. Faubion, seeking to cancel a deed dated March 18, 1975, executed by Elvis B. Faubion as independent executor of the estate of Beulah Faubion, deceased, and as successor trustee of the trust estate of A. B. Faubion, deceased, to himself and each plaintiff sought to recover an undivided ⅓ interest in 925½ acres of land in Mills and Lampasas Counties. They also alleged the option to purchase the land which Elvis secured from his parents was unenforceable as the description of the property in the option was insufficient; the deed is void under Section 352 of the Texas Probate Code and Article 7425b–12 of the Texas Trust Act as constituting self-dealing by a fiduciary; their brother's lease expired on June 30, 1975, following the death of their mother on October 19, 1974, and that for many years prior thereto the brother was in default in that he had failed to pay all the annual rent on the ranch; and, Elvis failed to exercise his option prior to midnight on June 30, 1975, the date on which the sisters contend the option expired.

All issues involved in the lawsuit except the issues concerning the summary judgment were severed.

The issues decided by the summary judgment were:

(A) the deed dated March 18, 1975, executed by the appellant as independent executor of the Estate of Beulah Faubion, deceased, and as trustee of the Trust Estate of A. B. Faubion, deceased, to himself was canceled. The land described in said deed was impressed with a trust in the hands of the appellant who was ordered to reconvey all of the land to the Estates of A. B. Faubion, deceased, and Beulah Faubion, deceased. It was further ordered that if appellant failed to reconvey said land the decree would operate as a conveyance of said land from him to said estates.

(B) the judgment provided appellees have and recover of and from the appellant title to and possession of a ⅓ interest in said land and that appellant and appellees are the joint owners each owning an undivided ⅓ interest.

(C) the judgment provides the description of the land in the contract executed by the appellant's parents to him is legally insufficient to identify the land.

(D) the judgment further provides that appellant did not exercise the option in accordance with the terms of the contract and that the contract expired at midnight on June 30, 1975, and that the option is unenforceable and that the appellant does not have the right to purchase said property.

The court granted the sisters' motion and overruled the brother's motion for summary judgment and the brother has appealed.

The parents of the litigants executed their will on May 3, 1961, which provided after their deaths, all their property should pass to their three children. On the same date, Elvis and his parents entered into a lease contract which provided:

"I.

In consideration of the covenants hereinafter set out the Lessors hereby lease and let to the Lessee for the period beginning July 1, 1961, and ending midnight on June 30 following the death of the second one of the Lessors to die, the following described land situated in Lampasas and Mills Counties, Texas, being 925½ acres in all, and being 178⅓ acres in Survey No. 41, I. & G.N.R.R. Company, original grantee, and 130 acres in the Edward Winston Survey, No. 51, and 617 acres in the Winston Survey, Abstract No. 720, and being the property upon which the Lessors now reside situated about seven and three-fourths miles northwest of the Town of Lometa, Texas. The Lessors retain and do not hereby lease the residence which they now occupy and the garage, chicken house, tool shed and wash house located near said residence, together with the right of egress and ingress thereto.

II.

The Lessee agrees to pay to the Lessors at Lampasas County, Texas, an annual rental of TWO THOUSAND TWO HUNDRED FIFTY DOLLARS ($2250.00) for the use of said premises, such rental being payable on the last day of the month of June of each year during the term, the first rental payment being due and payable on or before June 30, 1962.

III.

In the event the Lessee should fail to pay any installment of rent when due, or be in default in connection with any of the covenants herein contained, and if such default should continue for a period of thirty days after written demand for payment or performance, then the Lessors shall have the right to terminate the lease and to repossess the premises without prejudice to any legal remedies which they may have for collection of rent.

. . . . .

VII.

If in no way in default at the time the Lessee shall have the option to purchase the above described leased real estate, at the price of $80.00 per acre to be paid in cash at the time of the delivery of the Deed. Such option may be exercised only by written notice given to the Executor or Administrator With The Will Annexed of the Estate of the last of the Lessors to die and to the trustee of any trust or trusts created by the wills of the Lessors, in which trustee the title to all or any part of said land may then be vested, not less than ninety days after such Executor or Administrator With The Will Annexed has qualified as such . . . ."

The litigants' father died June 7, 1967, and their mother died October 19, 1974. Elvis qualified as independent executor under his mother's will and exercised his option to purchase the ranch. In his official capacity, he executed a deed to himself individually.

The summary judgment reveals that appellees' original motion for summary judgment and their first amended first supplemental motion for summary judgment and all of the petitioners' supporting summary judgment proof listed in paragraph 2 of the original motion and in paragraph 3 of the first supplemental motion were considered by the court. Paragraph 2 of the original motion recites the motion is supported by appellees' third amended original petition and the original answers of the defendant; by the affidavit of the appellees and all the certified copies attached thereto; and by the written deposition of the Federal Land Bank of Houston on file herein. Paragraph 3 of the first supplemental motion for summary judgment is as follows:

"(a) the affidavits of petitioners;

(b) each and all of the certified copies and certificates attached thereto and made a part thereof;

(c) the sworn testimony of defendant at a hearing in this litigation on January 29, 1976, that is shown on the

attached copy of page 46 of the Court Reporter's transcript thereof, as well as in petitioners' aforesaid affidavit;

(d) the exhibits of the financial records of defendant (other than and except his alleged ledger marked Exhibit D–1) produced, identified and attached by him to and as a part of his oral deposition taken August 11, 1975, and on file herein;

(e) the admissions of defendant, including those under oath contained in his pleadings and motions filed in this litigation;

(f) the written deposition of The Federal Land Bank of Houston on file herein;

(g) the written deposition of The Federal Land Bank Association of Lampasas on file herein;

(h) petitioners' three original petitions, their second and their third amended original petitions, their first supplemental petition, their original motion for summary judgment, all supplements thereto, motion to sever, and their opposition to defendant's affidavit opposing said motion for summary judgment; and

(i) defendant's three original answers, his first amended answer, his motion in opposition to petitioners' motion for summary judgment, and his affidavit in opposition to petitioners' motion for summary judgment."

Appellees say:

". . . It should be noted that appellant did not controvert with any admissible evidence the summary judgment facts established by appellees' evidence . ."

In *Freeberg v. Securities Investment Company of St. Louis*, 331 S.W.2d 825 (Tex. Civ.App.—San Antonio 1960, writ ref'd), the court said:

"Summary judgments are not granted by default, but upon the movant's discharge of his burden to show the absence of fact issues. If movant's showing poses only a question of law, there is no need to file counter-affidavits. *Couey v. Arrow Coach Lines*, Tex.Civ.App., 288 S.W.2d 192. When movant's own showing develops a fact dispute, he defeats his own summary judgment, though there are no counter-affidavits. *Jindra v. Jindra*, Tex. Civ.App., 267 S.W.2d 287; *Rolfe v. Swearingen*, Tex.Civ.App., 241 S.W.2d 236; 4 McDonald, Texas Civil Practice, § 17.26.3. A respondent is entitled to rely upon admissions, depositions and exhibits in the record, though he has not filed counter-affidavits. *Ragsdale v. McLaughlin*, Tex.Civ.App., 285 S.W.2d 467. On the basis of either of these rules, Freeberg had standing before the court at the summary judgment hearing, and the inference that he lost because he did not have a sworn answer or opposing affidavits is not correct."

In appellant's first amended original answer, he pleaded he was not in default on his contract; he exercised his option to purchase under said contract; and the conveyance to himself was proper. In the alternative, the defendant alleged that he was willing to resign as independent executor of the Estate of Beulah Faubion, deceased, and asked the court to appoint a disinterested party to serve as his successor as Administrator With Will Annexed of the Estate of Beulah Faubion, deceased, and if it were determined that he was not in default and the option was proper, the court could order his successor to convey the property to him. He further alleged that the description to the property was legally sufficient, but in the alternative, if it were insufficient that it was the result of a mutual mistake and it should be reformed so as to provide a proper description.

Appellees rely upon Section 352 of the Texas Probate Code which provides in part a personal representative of an estate shall not become the purchaser directly or indirectly of any property of the estate sold by him or by any co-representative if one be acting. They also rely upon *Seven-Up Bottling Company of Austin, Inc. v. Capital National Bank in Austin*, 505 S.W.2d 624

(Tex.Civ.App.—Austin 1974, writ ref.n.r.e.) which held in effect that Section 352 of the Texas Probate Code was clear and unambiguous and does not provide for any exceptions from its terms. Section 27 of the Texas Probate Code was not discussed in the *Seven-Up* opinion. Appellant contends Section 27 of the Texas Probate Code is applicable which provides, in part, when any person sells property and enters into a written agreement to make title thereto and shall depart this life without having made such title, the owner of such written agreement may file a complaint and cause the personal representative of such estate to show cause why specific performance of the written agreement should not be decreed. Appellant pleaded he was willing to resign and permit the court to appoint a disinterested person to serve as Administrator With The Will Annexed. Under these circumstances, the Administrator With The Will Annexed would be in a position to seek specific performance of the contract under said section of the Probate Code.

Appellant had a contract to purchase the land provided the description of the land was sufficient and provided further his option had not expired. Whether the option to purchase expired at midnight on June 30, 1975, involved fact questions which were not conclusively established by the summary judgment proof. When considered in the light of the pleadings and Section 27 of the Texas Probate Code, we hold the appellees did not conclusively establish as a matter of law they were entitled to have the deed canceled. The court held the description of the property in the contract was legally insufficient to identify the land. Appellant pleaded mutual mistake and asked for reformation of the contract to provide proper description if said description was insufficient. In *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972), the court held:

"... There is in the record strong evidence that the parties intended to describe a particular and identified tract of 12.375 acres in their contract, and that they were mutually mistaken in the belief that the description used was legally sufficient for that purpose. If that be a fact, Morrow would have been entitled to reformation of the contract had he sought it ...."

We hold the appellees have not discharged their negative burden of establishing conclusively there was no mutual mistake of fact in describing the land in the contract.

The judgment is reversed and the cause is remanded.